## REED *v.* STATE.

Decided June 27, 1891.

54  621
f 84  609

54   621
89   538

1.   *Larceny—Instruction—Weight of evidence.*

An instruction that " the presumption that the possessor of recently stolen
property is the thief is not a presumption of law, and a weak one of fact;
it is not at all conclusive, and of itself is not sufficient for conviction,"
invades the province of the jury.

2.   *Circumstantial evidence—Reasonable doubt.*

Upon indictment for larceny, proof of which rests upon circumstantial
evidence, a refusal to instruct the jury that " it is incumbent on the State
to submit proof, not only consistent with defendant's guilt, but inconsist-
ent with any other rational conclusion " is no ground of exception if the
jury are instructed that defendant's guilt must be " established by the
evidence to the satisfaction of the jury beyond a reasonable doubt."

3.   *Evidence—Other crimes.*

While evidence of other crimes is inadmissible if disconnected with the
crime charged, it will be competent if it identifies the defendant as the
party who committed the crime.   (Cf. *Felker* v. *State, ante* p. 489.)

APPEAL from *Sebastian* Circuit Court, Greenwood District.

EDGAR E. BRYANT, Judge.

*Evans & Hiner* for appellant.

1. It was error to admit testimony of other larcenies. 1 Gr. Ev., secs. 50, 52; 39 Ark., 280; 37 *id.*, 265; 22 Cal., 477; 11 S. W. Rep., 832; *ib.*, 927; 42 N. W. Rep., 1134; 6 So. Rep., 237; 35 N. W. Rep., 405; 41 *id.*, 136.

2. The instructions refused by the court were copied from *Boykin v. State*, 34 Ark., and Gr. Ev., and were not covered by any part of the charge.

*W. E. Atkinson*, Attorney General, and *Chas. T. Coleman* for appellee.

1. Evidence of defendant's possession of stolen goods, other than those mentioned in the indictment, was admissible, not to show that defendant would l e likely to commit the crime alleged, but to rebut the theory of the defense. 48 Ia., 678; 26 Tex., 209; 30 Miss., 653. It had a tendency to connect the defendant with the larceny, and thus identify him as the one who committed the larceny.

HUGHES, J. The appellant was convicted of larceny upon an indictment charging him with the stealing of a saddle, a blanket, a bridle and a slicker from George Harper. He filed a motion for a new trial which was overruled, to which he excepted, and appealed to this court.

On Sunday night, in the latter part of September, 1889, George Harper rode a mule to church. The saddle on which he rode had what is called in the evidence a "slicker" coat tied to it. He tied the reins of the bridle upon the mule to a tree. After services at the church had closed he went out and found that the mule was gone, also the saddle, bridle and "slicker." He returned to his home, which was about three and a half miles from the church. The mule came up in a few minutes after he reached home, without any of the articles mentioned.

George Harper, a witness, testified that, after he had lost his saddle on Sunday night in September, 1889, at the church, he did not see it again until about the last of January, or the first of February, 1890, when he found it at the house of Mrs. Reed, the mother of the defendant, with whom. he lived; that he (Harper) claimed the saddle and took it; that the defendant was not present at the time; that he never saw the saddle in the defendant's possession; that it had different stirrups and girth on it when he got it back; and that Duncan got the stirrups and girth. John Duncan, a witness testified: " The stirrups and girth had been stolen from me at Bowman Hall Church about Christmas before the defendant went to the territory." James George, a witness, testified : " I lost a pair of saddle pockets from my saddle at Bowman Hall Church, at Mansfield, on Christmas eve night (December 24, 1889); defendant left in a day or two on his trip to the nation. He was gone a week or two. I found the saddle pockets in the defendant's possession after he came back. This was the third Monday in January, 1890. He rode the saddle, and the saddle pockets were attached to it. I knew the pockets and recovered them from defendant by his consent." Mrs. Fry, a witness, testified that she saw the saddle at the house of appellant's mother, before the appellant made the trip to the Indian Territory. To the testimony about the saddle-pockets, the stirrups and girth having been lost and found in the possession of the defendant, he objected before the same was given to the jury; his objection was overruled, and he excepted.

The defendant introduced evidence tending to show that he could not have been at the church at the time George Harper lost his saddle on Sunday night in September, 1889; that he was at the time at the house of his brother. He also introduced testimony to show that the saddle was not seen by any of his family in his. possession until after his return from a trip to the Indian Territory in January or February, 1890. It was also in proof that, after the saddle,

saddle-pockets and stirrups were recovered from the defendant, he left the State, saying he was under suspicion and did not want to be arrested. But he returned in June following and surrendered to a constable. The account which the defendant gave of his possession of the property he was charged with having stolen was: that while in the Indian Territory, on the trip alluded to, he bought a horse and the saddle, said to have been stolen, from a man named Moore, and that the saddle had attached to it the saddle-pockets, a pistol and an overcoat; that he thus obtained the possession of the property for the stealing of which he was indicted. This was the substance of all the testimony in the case.

The court gave to the jury, amongst others, the following instruction: "3. The defendant is presumed innocent, and this presumption is evidence in his favor and protects him from a conviction until his guilt is established by the evidence to the satisfaction of the jury beyond a reasonable doubt."

1. Instruction as to weight of evidence. The appellant asked the court, among other things, to give the following: "1. The presumption that the possessor of recently stolen property is the thief is not a presumption of law, and a weak one of fact; it is not at all conclusive, and of itself is not sufficient for conviction. 2. In cases pending on circumstantial evidence, like the one now on trial, it is incumbent on the State to submit proof not only consistent with defendant's guilt, but inconsistent with any other rational conclusion." The court refused to give these.

There was no error in the refusal of the court to give the rejected prayer number one. It is the province of a jury to determine what weight they will give to evidence. If the court had given this instruction, it would have invaded the province of the jury to weigh the evidence.

2. Instruction as to reasonable doubt. While rejected prayer number two is not happily framed, it embodies, as we conceive, a correct proposition of law. It would not have been error to give it. Was it error to refuse it in this case? We think not, for the reason that instruction number three copied above, given by the court,

sufficiently declares the law upon the point involved, and it was not error to refuse to declare it in another instruction differently framed.

In the case of *Commonwealth* v. *Goodwin*, 14 Gray, 55, the Supreme Court of Massachusetts held: "Upon the trial of a criminal charge, proof of which rests on circumstantial evidence, a refusal to instruct the jury that they must be satisfied that the government has proved such a coincidence of circumstances as excludes every hypothesis except the guilt of the prisoner, is no ground of exception, if the jury are instructed 'that the government is bound to prove the defendant guilty beyond all reasonable doubt and to a moral certainty.'" In this case the court said : "The true rule is, that the circumstances must be such as to produce a moral certainty of guilt, and to exclude any other reasonable hypothesis ; that the circumstances taken together should be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the accused, and no one else, committed the offense charged ;" citing *Commonwealth* v. *Webster*, 5 Cush., 319.

This was the meaning and effect of instruction number three given by the court in this case ; and though the court might with propriety have stated the law more fully in reference to circumstantial evidence, its failure to do so was not error. Mr. Starkie (Ev., vol. 1, 10th ed., p. 865) says : "What circumstances will amount to proof can never be matter of general definition ; the legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury. On the one hand, absolute, metaphysical and demonstrative certainty is not essential to proof by circumstances. It is sufficient if they produce moral certainty to the exclusion of every reasonable doubt ; even direct and positive testimony does not afford grounds of belief of a higher and superior nature." *McCann* v. *State*, 13 Smedes & Marshall, 471 ; *Law* v. *State*, 33 Texas, 37. Chief Justice Shaw, in the celebrated Webster case, defined moral cer-

S C—40

tainty to be "a certainty that convinces and directs the understanding, and satisfies the reason and judgment, of those who are bound to act conscientiously upon it."    5 Cush., 320.

3. When evidence of other crimes admissible.
Did the court err in refusing to exclude the testimony in reference to the saddle-pockets, stirrups and girth having been lost and found in the possession of the defendant? "It is not generally competent to prove a man guilty of one felony by proving him guilty of another unconnected felony. * * * And the State, for the purpose of showing that the defendant would be likely to commit the crime charged, cannot prove that he committed other crimes, although of a like nature." 4 Am. & Eng. Enc. Law., p. 850. In the case of *Endaily* v. *State*, 39 Ark., 278, this court said: "It was also error to charge the jury that they might take into consideration the distinct and separate thefts in making up their verdict as to the guilt of appellant of the offense for which he was on trial." But the evidence in the case at bar in reference to the saddle-pockets, girth and stirrups, while not competent for the purpose of proving the defendant guilty of the larceny with which he was charged, was competent to identify the appellant as the party who committed the larceny. If these articles had been received by appellant lawfully, and found, as they were afterwards found, attached to the saddle in the possession of the appellant, these facts would have been circumstances tending to show that appellant was the person who took the saddle. If the evidence was competent for this purpose, it would not have been incompetent, because it might have tended to show that appellant stole the saddle-pockets, stirrups and girth.

In the Endaily case, which was a prosecution for horse stealing, the taking of the horses by the defendant was admitted; there was no question about who took them, but the question was as to the intent with which they were taken. The defendant in that case contended that the horses were taken to ride a short distance only, with no intention of stealing them. It was therefore not proper to prove the subsequent stealing of bridles and saddles to equip the

horses, to prove the intent with which the horses were taken. But the circumstances here are different; and the evidence that the saddle-pockets, the stirrups and girth were taken by some one after the saddle was taken, and were afterwards found in the possession of the appellant attached to the saddle, which was found in his possession, were circumstances tending to identify the appellant as the person who stole the saddle, and for this purpose was competent, but for no other purpose; and it would have been proper for the circuit court to have told the jury, it was competent for this purpose only.

The evidence was sufficient to support the verdict of the jury. Finding no error, we affirm the judgment.