YOUNG vs UNITED STATES.

Opinion rendered June 14, 1907.

(103 S. W. Rep. 771).

*Larceny—Evidence of Offense.*

> Defendant and his cousin drove two bunches of hogs to market from the same place in the same wagon at the same time, and sold the -hogs to the same man together at the same time. In a prosecution for larceny of a portion of the hogs, evidence that the others were stolen at a different time was admissible.

GILL, C. J., dissenting.

Appeal from the United States Court for the Central District of the Indian Territory; before Justice Clayton, November 29, 1905.

Henry Young was convicted of larceny and he appeals. Affirmed.

On November 25, 1904, appellant and one Bradley Carr were jointly indicted by grand jury, sitting at South McAlester, in the Central district. for the larceny on July 4, 1904 of six hogs from George Logsden. Defendant waived arraignment and pleaded not guilty. On November 16, 1905, defendant was tried separately by a jury who on November 17, 1905, returned into court a verdict of guilty. Motion for new trial was filed and overruled, and defendant prayed an appeal to this court, which was granted.

*Ira N. Eubanks*, for appellant.

*J. H. Wilkins*, U. S. Atty.

TOWNSEND, J. (after stating the facts). Appellant has filed eight assignments of error as follows; "(1) The court erred in admitting the evidence of Gen. Holden, a witness for the prosecution, showing that the witness had lost 10 black hogs at a time three or four weeks prior to the time when the

hogs for the larceny of which the defendant was on trial were stolen. (2) Because the court erred in admitting the evidence of Ben Holden, son of Gen. Holden, and also a witness for the prosecution, showing that his father had lost 10 black hogs four weeks prior to the time the hogs of George Logsden were alleged to have been stolen. (3) Because the court erred in admitting the evidence of Ben Holden, showing that at a time from two to four weeks prior to the loss of the Holden hogs, and from six to eight weeks prior to the alleged larceny for which the defendant was on trial, he, (the witness) met the defendant in the woods with a gun near where his father's hogs ranged. (4) Because the court erred in admitting the evidence of Joe Dyer, a witness for the prosecution, showing that he bought 10 head of black hogs, answering the description of the hogs lost by the witness Gen. Holden. (5) Because the court erred in admitting the evidence of Joe Dyer, relative to a conversation between him and the witness Gen. Holden about the said black hogs when the defendant was not present. (6) Because the court erred in admitting the evidence of Joe Dyer, to the effect that the black hogs which he bought from Bill Young answered the description given about that time by the witness Gen. Holden. (7) Because the verdict is against the law and the evidence. (8) Because the court erred in over-ruling the defendant's motion for a new trial and in pronouncing judgment and sentence herein."

Assignments of error 1 to 6 all relate to the admissibility of certain evidence offered by the prosecution and allowed to go to the jury. The record shows that George Logsden, some time in July, 1904, moved from his place near Quinton, about seven miles, to Vireton, leaving one Teel to look after his hogs, six of which are alleged to have been taken by the defendant. About four weeks thereafter on the 4th day of July, 1904, he went back to look for his hogs, but they were not to be found. The evidence further shows that Henry Young, appellant

here, and Bill Young, a cousin or half-brother of Henry, had been living in a camp in that neighborhood, but had moved from there about four weeks prior to the alleged larceny, over near Joe Dyer's place. Dyer testified; "Sometime in July, 1904, I bought some hogs from Bill Young. I met him one Sunday morning and engaged them from him. He told me then he had 10 head and could trade for some more. I directed him to deliver them to me at Quinton, Wednesday following" —which was done. The government was allowed to prove over the objection of defendant, that Gen. Holden, who lived about 1½ miles from Logsden in the summer of 1904, had lost 10 head of black hogs three or four weeks prior to the time Logsden's hogs are alleged to have been stolen, and that the 6 hogs and the 10 hogs were taken together by Bill Young and the defendant to Joe Dyer and sold in one lot. The general rule is that "evidence of one distinct substantive offense is generally inadmissible on the trial of another" (Rapalje on Larceny, §199), "but may be resorted to in some cases when it is necessary to prove a motive, and there is an apparent connection between the criminal act proposed to be proved and that charged,     *     *     *     where it is necessary to prove scienter and the like;     *     *     *     but evidence which tends directly to prove defendant's guilt of the offense charged is admissible although it may also tend to prove a distinct felony and thus prejudice the accused." Was there such a connection between the two larcenies as that evidence of the former larceny would be admissible on the trial of the latter? It is shown by the record beyond question that the two bunches of hogs were taken from the same range, driven to market at the same time, in the same wagons by the two Youngs, and sold to the same man together at the same time. The larceny is still in progress; the transaction still going on. And in Rapalje on Larceny, § 201, it is said: "Under an indictment for larceny, evidence of the subject-

matter of another indictment for larceny may be admitted where the two offenses are so connected as to be parts of the same transaction." So, also, McClain, in his work on Criminal Law, says: "Other distinct larcenies committed by the defendant cannot be shown for the purpose of identifying him as the one who committed the larceny in question, but other crimes of the same character, and forming part of the same transaction may be shown." "To make one criminal act evidence of another, some connection must exist between them. That connection must be traced in the general design, purpose or plan of the defendant, or it may be shown by such circumstances of identification as necessarily tend to establish that the person who committed one must be guilty of the other. The collateral or extraneous offense must form a link in the chain of circumstances or proofs relied upon for conviction. Evidence of the perpetration by the defendant of a crime other than that on trial is not admissible unless such connection be shown between the two offenses as tends to prove that if the defendant were guilty of the one he was also guilty of the other." Swan vs Com., 104 Pa. 218, 4 Am. Cr. R. 188. So, in the case of Reed vs State, 54 Ark. 621, 16 S. W. 819, the court said: "But the evidence in the case at bar in reference to the saddle pockets, girth, stirrups, while not competent for the purpose of proving the defendant guilty of the larceny with which he was charged was competent to identify the appellant as the party who committed the larceny. If these articles had been received by appellant lawfully, and found, as they were afterward found, attached to the saddle in the possession of the appellant, these facts would have been circumstances tending to show that appellant was the person who took the saddle. If the evidence was competent for this purpose, it would not have been incompetent because it might have tended to show that appellant stole the saddle pockets, stirrups, and girth." In Hughes Criminal Law and Procedure, it is said:

"Sec. 3137. Proof of another distinct offense is competent if it in any way tends to prove the accused guilty of the crime for which he is on trial, or where there is such a logical connection between the two that the one tends to establish the other, or where the two acts form but one transaction, or to prove motive and intent.

"Sec. 3138. It is not a valid objection to evidence, otherwise competent, that it tends to prove the prisoner guilty of a distinct and different offense. Evidence of other offenses is admissible to prove intent, motive, knowledge, malice and the like"—citing State vs Palmer, 65 N. H. 216, 20 Atl. 6, 8 Am. Cr. R. 199; State vs Kepper, 65 Iowa, 745, 23 N. W. 304, 5 Am. Cr. R. 594; Ter. vs McGinnis, 61 Pac. 208, 10 N. M. 269; Com. vs Corkin, 136 Mass. 429; Com. vs Choate, 105 Mass. 451; Com. vs Blood, 141 Mass. 575, 6 N. E. 769; Maynard vs People, 135 Ill. 432, 25 N. E. 740; Underhill, Cr. Ev. § 89.

It is contended by counsel for appellant that evidence cannot be admitted as to the former larceny, because it was too far removed in point of time, citing Parker vs U. S., 1 Ind. Ter. 592, 43 S. W. 858. But the court there used this language: "If, in addition to the fact that the stolen property was found in possession of the defendant recently after the alleged larceny, it be shown that it had been stolen at or about the same time and place as that charged to have been stolen, then it is admissible in all of the cases, because under the circumstances of each case, it tends to prove the matter in controversy." And in Dunn vs State, 2 Ark. 229, 35 Am. Dec. 54, the court says: "The testimony of the prisoner's guilt, or participation in the commission of a crime or felony, wholly unconnected with that for which he is put upon his trial, cannot, as a general rule, be admitted, is unquestionably true; but in cases where the scienter or quo animo is requisite to, and constitutes a necessary and essential part of, the crime with which the prisoner is charged,

and proof of such guilty knowledge, or malicious intention, is indispensable to establish his guilt, in regard to the transaction in question, or in cases of forgery, murder, and the like, testimony of such acts, conduct, or declarations of the accused, as tend to establish such knowledge or intent is competent legal testimony to go to the jury, notwithstanding they may constitute in law a distinct crime.    *    *    *    Testimony, however, of a distinct murder, committed by the prisoner at a different time, or of some other felony or transaction committed upon or against a different person and at a different time, in which the prisoner participated, cannot be admitted until proof has been given establishing, or tending to establish the offense with which he is charged, and showing some connection between the different transactions."

This court is of the opinion that the court below committed no error in allowing the testimony complained of to go to the jury; and, as the charge of the court does not appear in the record, and no exceptions were taken thereto by appellant, we may presume that under the charge of the court the jury had correct instructions as to the law applicable to the case.

In our judgment there was sufficient evidence to sustain the verdict, and the judgment of the court below should be, and it is hereby, affirmed.

Lawrence, J., concurs.    Gill, C. J., dissents.