## BRUCE *v.* STATE.

Opinion delivered June 23, 1900.

HOMICIDE — SELF-DEFENSE — INSTRUCTIONS.— Defendant killed a United States deputy marshal, who was attempting to arrest him for illicit distilling. The state's evidence tended to prove that the deputy had approached within twenty-five steps of defendant, and, presenting his gun, commanded defendant to surrender, and that the latter immediately fired and killed the deputy. Defendant's evidence tended to prove that deceased and those with him approached defendant in a fast run and commenced firing their guns before he had made any resistance, and that defendant did not know that deceased was an officer when he fired. The court, at defendant's instance, instructed the jury that if Bruce had no notice of the fact, or reasonable grounds to know, that deceased was an officer, and the killing was apparently necessary to save his own life, or prevent his receiving great bodily injury, the killing of deceased was homicide in self-defense. *Held*, that it was not prejudicial error to refuse a further instruction to the effect that if the killing appeared to defendant to be necessary, he was justified in taking the life of deceased to protect his own. (Page 313.)

Appeal from Pope Circuit Court.

WM. L. MOOSE, Judge.

*G. W. B₁ ₋ee,* for appellant.

The attempted arrest was not made in the manner required by law. Sand. & H. Dig., §§ 1971–3; ̈49 Ark. 449. The court erred in giving the ninth, thirteenth and fourteenth instructions asked by the state. Sand. & H. Dig., §§ 1971–2. The court erred in its refusal of instructions asked by appellant upon the law of self-defense.

*Chas. C. Waters* and *J. T. Bullock,* ̈for appellee.

No warrant was required for deceased to make an arrest for a crime against the United States. U. S. Rev. St. § 788; *Cf.* Sand. & H. Dig., § 1968. Instructions Nos. 13 and 14 were properly given. 2 Bish. Cr. Law, § 652; Clark, Cr. Law, 161; McClain, Cr. Law, § 328; 1 Whart. Cr. Law, § 413; 27 Cal. 572; 71 Miss. 179; 58 Ark. 47.

BATTLE, J. Harve Bruce, Alva Church, Dave Milsaps and Turner Skidmore were jointly indicted by the grand jury of the Pope circuit court for murder in the first degree, which was alleged to have been committed on the 29th day of August, 1897, in Pope county, in this state, by killing B. F. Taylor. The defendants severed their trials, and Harve Bruce was tried and convicted of involuntary manslaughter, and his punishment was assessed at six months' imprisonment in the penitentiary, and he appealed.

The appellant killed B. F. Taylor at the time and place and by the means alleged in the indictment. Taylor was a deputy marshal of the United States at the time he was killed. At this time he and others under his command were attempting to arrest Bruce, the appellant, and others, for illicitly distilling whiskey, and to capture an illicit distillery. The killing occurred at the distillery. Alva Church and the appellant were there at that time. The appellant had committed an offense by distilling liquor contrary to the statutes of the United States, and was carrying arms, sleeping in the woods, and avoiding arrest by the United States marshal. At the time Taylor was killed he and his *posse comitatus* had approached within twenty-five or thirty steps of Bruce, without his knowledge. The evidence adduced by the state in the trial tended to prove that

Taylor commanded Church and Bruce to surrender, he and those assisting him at the same time presenting arms and advancing, and that Bruce immediately fired his gun several times at them, and killed Taylor, before they had made any attempt to do him violence. On the other hand, the evidence adduced by the appellant tended to prove that Taylor and those with him approached Bruce in a fast trot or run, and commenced firing their guns at him before he had made any resistance.

As Bruce was convicted of involuntary manslaughter, it is unnecessary for us to notice any of the errors complained of, except those which relate to self-defense. If Taylor was attempting to arrest Bruce unlawfully, Bruce had no right to kill him to avoid arrest. If in doing so he did not necessarily act in self-defense, in the protection of his own life or to prevent great bodily harm, he was at least guilty of manslaughter. Mr. Bishop, in his work on Criminal Law, says: "If one, even an officer, undertakes to arrest another unlawfully, the latter may resist him. He has no protection from his office, or from the fact that the other is an offender. But the doctrine already stated that nothing short of an endeavor to destroy life or inflict great bodily harm will justify the taking of life, prevails in this case, so that, if the person thus being unlawfully arrested kills the aggressor in resisting, he commits thereby the lower degree of felonious homicide called 'manslaughter.' Still, in principle, life and liberty stand substantially on one foundation; life being valueless without liberty. And the reason why a man may not oppose an attempt on his liberty by the same extreme measures permissible in an attempt on his life appears to be because liberty can be secured by a resort to the laws." 1 Bishop's New Criminal Law, § 868, and cases cited.

Upon self-defense the court instructed the jury, at the request of the appellant, as follows: "If the jury, from the evidence, believes that the defendant was placed in the position, at the time of the killing, in which his life was imperiled by the deceased, and he slew him without having any notice of his official character, and the killing was apparently necessary to save his own life, or to prevent his receiving a great bodily

injury, then the killing of deceased was homicide in self-defense; nor does it matter that deceased was legally seeking to arrest the defendant, if the defendant had no notice of the fact, or reasonable grounds to know that he was an officer."

And the court refused to instruct the jury, at the request of the appellant, as follows: "The defendant claims that the killing was justifiable, because done in necessary self-defense; and you are instructed that, in determining whether the killing was necessary, the defendant had the right to be governed by the situation as it appeared to him at the time; so that, under the law, if from the appearance the defendant honestly believed, without fault on his part, that he was in danger of losing his life or receiving great bodily harm from his assailants, he was as much justified as if the danger had been actual or real."

The appellant insists that the court erred in refusing to instruct the jury as requested. His contention is that he had the right to act upon his situation as it appeared to him at the time he did the killing. As to how it did appear, the evidence was conflicting. The evidence adduced by the state tended to prove that Taylor was a deputy marshal of the United States, as he was; that he approached within twenty-five or thirty steps of the appellant, and, presenting his gun, commanded him to surrender, and, instead of obeying, he immediately fired his gun at Taylor, and killed him. On the other hand, the evidence on the part of appellant tended to prove that Bruce was ignorant of the fact that Taylor was a deputy marshal; that Taylor and those with him, without any warning, approached him in a run, and commenced firing their guns at him before he had made any resistance, or shown that he would; and that Bruce then killed Taylor. Upon this evidence the court instructed the jury, at the request of the appellant, that if Bruce "had no notice of the fact, or reasonable grounds to know, that he was an officer," "and the killing was apparently necessary to save his own life, or prevent his receiving a great bodily injury, that the killing of the deceased was homicide in self-defense;" and he sought to have this instruction amended by an additional one to the effect that, if the killing appeared

to Bruce to be necessary, he was justified in taking the life of Taylor to protect his own. But it seems to us that, he was not prejudiced by the refusal to give that instruction; for, if the evidence adduced by him was true, then it must have so appeared to the jury and to him; and, if the evidence adduced by the state was true, it could not have so appeared to the jury or Bruce, and he at least acted recklessly and carelessly, without due circumspection, and was guilty of manslaughter; so that, according to any view the jury could have taken of the evidence, he was not prejudiced by the refusal to instruct as he requested.

The verdict of the jury is remarkable. There was no evidence to sustain it as to the degree of homicide of which they found the defendant guilty. They found that he was not justified or excusable, and found him guilty of the least offense they could. They were unreasonably lenient to him, and he has no right to complain. Sand. & H. Dig., § 2260; *Pratt* v. *State*, 51 Ark. 167; *Fagg* v. *State*, 50 Ark. 506, 508.

Judgment affirmed.