## FREEMAN *v.* STATE.

### Opinion delivered November 7, 1921.

1. CONTINUANCE—REQUISITES OF MOTION.— A motion for continuance on account of the absence of a witness, though verified, will not be sufficient in a criminal case where it fails to state that the affiant himself believes that the facts to which the witness, if present, would testify are true.

2. CONTINUANCE—ABSENT WITNESS.— A motion for continuance on account of the absence of a witness beyond the jurisdiction of the court should show how the attendance of the witness could be had at the next term of court.

3. CRIMINAL LAW—HARMLESS ERROR.— One convicted of murder in the second degree cannot contend on appeal that if he was guilty of any offense it was murder in the first degree, and therefore that the verdict was not supported by the evidence.

4. CRIMINAL LAW—NECESSITY OF MOTION FOR NEW TRIAL.—The admission of testimony not assigned as error in the motion for new trial will not be considered on appeal.

5. CRIMINAL LAW—NECESSITY OF OBJECTION.—Admission of testimony not objected to at the time it was offered cannot be assigned as error on appeal.

6. HOMICIDE—DYING DECLARATIONS.—Circumstances *held* to show that at the time deceased made certain statements he was conscious that death was impending and that he had no hope of recovery.

7. CRIMINAL LAW—EVIDENCE.—It was competent in a murder case to permit the sheriff to testify as to finding an automatic pistol and some shells in the cell occupied by defendant.

Appeal from Union Circuit Court; *C. W. Smith,* Judge; affirmed.

*Mahony & Yocum,* for appellant.

The court erred in refusing a continuance on the ground that the evidence of the absent witnesses was material to his defense. 91 Ark. 497.

There was error in admitting the alleged dying declarations of the deceased. 81 Ark. 417.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

The court was correct in overruling defendant's motion for a continuance. C. & M. Digest, § 3130; *Id.* 1270; 2 Ark. 34; 101 Ark. 514; Kirby's Digest, § 6173; 124 Ark. 599; 15 Ark. 252; 103 Ark. 509; 62 Ark. 543; 125 Ark. 269; 101 Ark. 513. The testimony of the absent witnesses was cumulative. 79 Ark. 594; 82 Ark. 203; 86 Ark. 317; 100 Ark. 149; 120 Ark. 562.

There was no error in the verdict of the jury. 68 Ark. 310; 37 Ark. 433; 133 Ark. 373; *Webb* v. *State,* ms. op. (Ark.); 135 Ark. 117; 136 Ark. 385.

The State did not take an unfair advantage of defendant. 32 Ark. 220; 36 Ark. 653.

There was no error in admitting the proof of the dying declarations of deceased. 130 Ark. 11. Admissibility of dying declarations is for the court, their credibility for the jury. 125 Ark. 209; 104 Ark. 162.

WOOD, J. The appellant was indicted on July 19, 1921, for the crime of murder in the first degree in the killing of one T. B. McCain. He was tried on the 26th day of July, 1921, and convicted of murder in the second degree. The defendant filed a motion for continuance, in which he set up that "he was a stranger in the community without friends and without funds and had not had an opportunity to prepare his case for trial; that, being confined in jail and being a stranger, he did not know the names of certain witnesses who could and would give testimony material to his case; that the witnesses are strangers in the community; that upon the proper investigation their identity can be established and their attendance had at court; that the driver of a service car is a material witness in this case, but that the defendant does not know his name, but can find said

witness if. an opportunity is given him; that this witness, if present, would testify that he took the defendant prior to the time of the alleged killing from the neighborhood where the deceased is alleged to have been killed and drove defendant over to the rooming house of Dr. Tutt about two miles distant and left him there; that the defendant is informed and believes that Blondie Gordon would testify, if present, that he saw the defendant leave the valley where the deceased is alleged to have been shot and killed an hour or longer prior to the time the shooting is said to have occurred; that the defendant was not anywhere near or about the premises where the deceased is said to have been shot and killed; that the deceased was alleged to have been killed something like an hour after the defendant went to the home of Dr. Tutt; that witness is a resident of Breckenridge, Texas, and the defendant, if given time, can procure his attendance, or take his deposition; that the evidence of the car driver and the evidence of Blondie Gordon is material to the issue in the case; that the defendant cannot make the proof by any other witnesses at this time known to the defendant; that there are other witnesses who could testify to the same facts, but the names of same are unknown to him.''

The court overruled the motion for a continuance, and this is assigned as error in one of the grounds of appellant's motion for a new trial. The motion for continuance was duly verified, but it will be observed it does not state that the affiant himself believed that the facts which he states the witness, if present, would testify to, were true. This was necessary. Secs. 1270, 3130, Crawford & Moses' Digest; *Burris* v. *Wise,* 2 Ark. 33, 40; *State Life Insurance Co.* v. *Ford,* 101 Ark. 514. Moreover, the motion states that one of the absent witnesses whose presence was desired was a resident of the State of Texas, and therefore beyond the jurisdiction of the court. The motion does not set up facts showing how the attendance of this witness could be had at the next term of court. It was not an abuse

of the court's discretion to overrule the motion for continuance on account of the absence of this witness. *C. R. I. & P. Ry. Co.* v. *Harris,* 103 Ark. 509; *Hamilton* v. *State,* 62 Ark. 543; *James* v. *State,* 125 Ark. 269.

The appellant also contends that if he was guilty of any offense it was murder in the first degree, and that the verdict is therefore contrary to the law and the evidence. There was testimony to warrant the jury in returning a verdict against the appellant for murder in the first degree. The appellant is not in an attitude to complain because the jury found him guilty of a lesser degree of homicide when the testimony would have justified their finding him guilty of a higher degree. *Webb* v. *State,* ante p. 75; *McGough* v. *State,* 113 Ark. 301; *Bruce* v. *State,* 68 Ark. 310; *Allen* v. *State,* 37 Ark. 433.

The appellant proved by the sheriff of the county that some one tried to get him to put a prisoner charged with grand larceny in the same cell with appellant in order that a confession from the appellant might be obtained; that the sheriff refused the request, telling the party that he would not believe anything that the person accused of grand larceny would say. The appellant complains here because he says that the above testimony shows an attempt on the part of the State to take an unfair advantage of appellant. The above testimony was elicited by the appellant himself. Furthermore, it does not show or tend to show that any unfair advantage was attempted to be taken of the appellant by the State. It was not shown who the party was that made the request of the sheriff, and certainly there is nothing in this testimony to connect the prosecuting attorney or any one representing the State with an effort to procure a confession from the appellant. Moreover, the appellant did not make the complaint he here presents as one of the grounds of his motion for a new trial. There is nothing in this upon which to predicate error in the rulings of the trial court.

Appellant next contends that the court erred in permitting one witness, a negro by the name of Hodge, who was accused of robbery and who was in jail at the same time with appellant, to testify that he heard appellant acknowledge to one Slim that he (appellant) had killed McCain. No objection was made to this testimony at the time it was offered, and the ruling of the court in permitting it is not assigned as error in appellant's motion for a new trial. So there is nothing in this contention upon which error can be predicated.

The appellant argues that the court erred in permitting witnesses C. A. McCain, J. D. Williams and A. H. Lewis, to testify to statements made by the deceased after he was shot. C. A. McCain, the brother of the deceased, testified concerning this that he saw his brother after he was shot when he was being taken from the automobile to the hospital. His brother lived about twenty minutes after he got to the sanitarium. He stated that he supposed his brother realized that he was going to die. Witness said to his brother: "Who killed you, Tal?" and his brother replied, "The man who lives behind the barber shop shot me." The witness further testified that his brother T. B. McCain "couldn't talk loud, but he talked well enough to let you know he knew he was going to die." The witness was then asked who lived behind the barber shop, and stated that it was Blackey Freeman, the appellant.

Witness Williams testified that he was about the first one to get to McCain after he was shot. McCain told those who were at his side soon after he was shot that the man running around the building after shooting him was Blackey Freeman. Some one remarked that McCain was not hurt much, and witness tore his clothes back and saw that he was shot with buckshot. Then McCain remarked that he was in pain, and wanted to get to a sanitarium, and called for his brother.

Witness Lewis testified that he drove the car in which T. B. McCain was taken to the sanitarium. He was asked, "What if any statement did McCain make

to you as to who killed him?'' and answered, ''When he was coming along through the pine thicket, some men were hanging on the side of the car, and I told them to get off. One of them had a flash light, and as I looked back over the side I says, 'T. B., who shot you?' and he said, 'The man at the back of the barber shop—the man with the white hat.' '' The witness further stated that McCain told witness that the man who shot him lived ''to the back of the barber shop,'' that the man had on a light shirt and a pair of khaki pants, and said, ''For God's sake, don't let him get away.'' This witness stated that McCain lived about twenty or twenty-five minutes after he got to the sanitarium; that his clothes were open, and witness saw the blood oozing out of the holes made by the shot.

The appellant did not save any objection to the above testimony at the time it was offered. Therefore, the cause could not be reversed on the assignment of error in the ruling of the court in permitting this testimony to go to the jury. See *Lisko* v. *Uhren,* 130 Ark. 111. Furthermore, even if proper objection had been made to this testimony at the time it was given, the court did not err in allowing it to go to the jury. The fact that T. B. McCain died within eighteen or twenty minutes after he was wounded, having been shot by fifteen or eighteen buckshot in his side or stomach, and that he talked loud enough to let his brother know that he, T. B. McCain, knew that he was going to die; that his person was exposed so that he could see his wounds; that the blood was flowing from these wounds, and that in response to a question as to who killed him he replied naming the appellant, are all circumstances which justified the court in holding that the testimony was competent. These circumstances certainly tended to prove that McCain at the time he made the declarations was conscious that death was impending, and that he had no hope of recovery. *Rhea* v. *State,* 104 Ark. 162, 176, and cases there cited.

It is next insisted by counsel for appellant that the court erred in permitting witness Jack Davis to testify on cross-examination, over the objection of appellant, that Bill May conducted a rooming house and dance hall; that the house had quite a few women in it. Witness stated that he was living there at the time with his wife. He was asked if most of the women living there were not lewd women and replied, "I can't say—it is a dance hall." He stated that he moved away a day or two after the trouble. There was nothing in this testimony prejudicial to appellant.

It is next urged that the court erred in permitting the sheriff to testify relative to finding an automatic pistol and some shells in the cell occupied by the appellant under the cover of the bed where the appellant slept. The sheriff further testified that he did not know how the shells got there; that the appellant said he didn't know anything about them. Two of the appellant's friends had visited him that day. The witness, upon the information he received, searched the cell and found the gun. The appellant objected to the above testimony unless the State would make the witness its own witness, which the State did. The appellant, therefore, is not in an attitude to complain of the ruling of the court, even if the testimony were incompetent, but the testimony was clearly competent. Although a weak circumstance, it was one which the jury had the right to consider in passing on the credibility of appellant as a witness in his own behalf.

It is last contended that there is no testimony to sustain the verdict. It could serve no useful purpose to set out and discuss the testimony in detail bearing upon this issue. What we have already set out in the way of the dying declarations of McCain was competent evidence, and this, together with the other facts adduced, was amply sufficient to sustain the verdict.

The judgment is therefore correct, and it is affirmed.