KURCK *v.* STATE.

5045 362 S. W. 2d 713

Opinion delivered November 12, 1962.

[Rehearing denied December 17, 1962.]

*Lightle & Tedder* and *Jack M. Lewis,* for appellant.

*Frank Holt,* Atty. General, by *Milas H. Hale,* Asst. Atty. General, for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Clinton Kurck, was charged by information with the crime of rape, it being alleged that on November 6, 1961, he assaulted and raped one Phyllis Carlton. Appellant filed a

motion to dismiss the information, asserting that the court had no jurisdiction over the area wherein the alleged crime was committed, due to the fact that such lands were acquired by the United States on August 18, 1959, and jurisdiction over the territory had been ceded to the United States by the State of Arkansas, pursuant to Section 10-1103, Ark. Stats. Anno. The motion was overruled by the court, and on trial, the jury found appellant guilty of the crime of Assault with Intent to Rape, and fixed his punishment at four years confinement in the Arkansas State Penitentiary. From the court's judgment so entered, appellant brings this appeal. For reversal, appellant relies upon five points, as follows:

## I

The court has no jurisdiction for the reason that the scene where the alleged crime was committed had been condemned and taken by the United States Government on August 18, 1959, and under Arkansas Statute 10-1103, which was then in effect, all jurisdiction of the State had been ceded to the United States Government.

## II

The defendant was entitled to examine the jury panel on *voir dire* as to their conscientious belief as to the death penalty.

## III

The court erroneously refused defendant's instruction No. 1 and instructed the jury as to the crime of assault to commit rape—the intercourse being admitted.

## IV

The court erred in permitting leading questions by the State.

## V

The court erred in refusing defendant's requested instruction No. 2 relative to prosecutrix's duty to make an outcry.

We proceed to discuss each alleged error in the order listed by the appellant.

I

In 1939, the Legislature enacted Act 327 which appears in Volume 2, Ark. Stats. Anno. (1947) as Section 10-1103. That section reads as follows:

"The consent of the State of Arkansas is given to the acquisition by the United States by purchase or condemnation with just compensation or by grant or otherwise, of such lands in the State of Arkansas as in the opinion of the Federal government may be needed for the construction of dams, reservoirs, floodways, locks, canals, hydro-electric power plants, channel improvements, channel diversions, and for such other works as may be necessary for the control of floods, the development of hydroelectric power, the irrigation of lands, the conservation of the soil, recreation, and other beneficial water uses, and the jurisdiction of this state within and over all grounds thus acquired by the United States within the limits of the State of Arkansas is hereby ceded to the United States. Provided, that this grant of jurisdiction shall not prevent execution of any processes of this State, civil or criminal, on any person who may be on said premises."

Title 40 U.S.C.A., Section 255, deals with the acquisition by the United States of jurisdiction over lands to which it has acquired title for various purposes.[1] Pertinent portions read as follows:

"Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not thereto-

[1] This is also codified as 33 U.S.C.A., § 733, and 50 U.S.C.A., § 175.

fore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

In 1959, the Arkansas General Assembly passed Act 256[1a] [§ 10-1127 through 10-1129, 1961 Supp.], which had the effect of repealing Section 10-1103, since the provisions of 10-1103 and 10-1127 and 10-1128 are in conflict.[2] This, of course, is known as "repeal by implication". The act, *inter alia,* provides that the United States, through a duly authorized department, agency, or officer, shall file a notice of intention to acquire legislative jurisdiction, with the Governor. "The notice shall contain a description adequate to permit accurate identification of the boundaries of the land or other area for which the change in jurisdictional status is sought and a precise statement of the measure of legislative jurisdiction sought to be transferred."

The Governor then makes his recommendations, together with those of the Attorney General, to the next session of the General Assembly "which shall be constitutionally competent to consider the same". Further, the Chief Executive shall cause duly authenticated copies of the notice and act to be recorded in the office of the Recorder of the county where the land or other area affected by the transfer of jurisdiction is situated.

Appellant calls attention to the fact that in our first act [10-1103], there was no provision for specific or additional action on the part of the state, or the United States, before jurisdiction passed to the federal government. Appellant says, "The statute unequivocally and without

---

[1a] Under the provisions of the act, it was to become effective on January 1, 1960.

[2] The act has no repealing clause.

any attempt at providing a method whereby the United States might acquire jurisdiction for criminal purposes automatically ceded all jurisdiction over the lands." Appellant then points out that the United States filed its Declaration of Taking in the United States District Court on August 18, 1959,[3] and, under his view, at that time, jurisdiction over these particular lands passed to the United States Government. Appellant emphasizes that this taking occurred before the effective date of Act 256 of 1959 [10-1127 through 10-1129, 1961 Supp.], and, accordingly, argues that jurisdiction over the premises where this alleged offense took place, was in the United States Government on November 6, 1961, the time of the occurrence complained of. It is not really necessary to discuss which state statute was in effect at the time of the alleged offense, for appellant's argument is fallacious from another standpoint. The portion of Title 40, Section 255, heretofore quoted, provides that the head or other authorized officer of the government agency may accept jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor or such other manner as prescribed by the laws of the state; further, "unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed[4] that no such jurisdiction has been accepted." It is, thus, apparent that, even though Section 10-1103 was the effective state act at the time of the taking, still under Title 40, the United States Government had not accepted jurisdiction over these lands, *i.e.,* the record does not reflect that notice of acceptance has been filed with the Governor of Arkansas, or jurisdiction accepted in any other manner. Certainly, the state cannot force jurisdiction upon the federal government, and until such time as an acceptance is filed by the United States, jurisdiction remains in this state. The burden was upon appellant to establish a lack of jurisdic-

---

. [3] This date appears in the motion to dismiss for lack of jurisdiction, though the date used in the Declaration of Taking is April 7, 1959. It is immaterial in this case as to which date is correct.

[4] Bouvier's Law Dictionary, Volume 1, Page 579, defines "Conclusive Presumption" as follows: "A rule of law determining the quantity of evidence requisite for the support of a particular averment which is not permitted to be overcome by any proof that the fact is otherwise."

tion, and this has not been done. We thus find no merit in this contention.

## II

Appellant contends that he was entitled to question each member of the jury panel relative to such juror's views concerning the death penalty. Upon objection by the Prosecuting Attorney, who had previously stated that he was not seeking the death penalty, the court refused to permit the respective jurors to answer. Even if this ruling by the court constituted error, we are unable to see how appellant was prejudiced. Of course, if the jury had brought in a verdict fixing punishment at death in the electric chair, a far different matter would be presented. Here, however, the sentence was rather light, and we have held that where an error by the court inures to the advantage of a defendant, he cannot be heard to complain. *Bruce* v. *State,* 68 Ark. 310, 57 S. W. 1103, *Glenn* v. *State,* 71 Ark. 86, 71 S. W. 254.

In addition, it does not appear from the transcript that appellant exhausted his peremptory challenges. This, in itself, would preclude the finding of merit on this point. See *Green* v. *State,* 223 Ark. 761, 270 S. W. 2d 895, and *Nail* v. *State,* 231 Ark. 70, 328 S. W. 2d 836.

## III

Appellant stoutly maintains that the court erred in not giving his requested instruction No. 1, and by instructing the jury on the crime of assault with intent to commit rape, inasmuch as he admitted the act of intercourse with the prosecuting witness, but contended that such act was committed with her consent. Appellant's requested instruction No. 1 defined the crime of rape, and further stated,

"If these allegations are proved beyond a reasonable doubt, there is but one form of verdict that would be responsive, that is, guilty as charged, the punishment of which is death in the electric chair or life imprisonment at hard labor. Under the evidence in this case, you would have to find the defendant either guilty of rape or not

guilty of any offense; there is no evidence here that would authorize this court in submitting any other offense whatever than that laid in the Information, which is rape."

This instruction was refused. The court, over the objections of appellant, gave the following instruction:

"Under this information it is competent for you if you think the evidence justifies it, to convict the defendant of rape, of assault with intent to commit or to acquit the defendant outright."

The court then defined the charge of assault with intent to commit rape. Appellant, which admitting that the cases of *Harrison* v. *State,* 222 Ark. 773, 262 S. W. 2d 907 and *Bradshaw* v. *State,* 211 Ark. 189, 199 S. W. 2d 747, hold that the charge of assault with intent to rape may be included within the charge of rape, under circumstances similar to the case before us, then asserts there is a conflict in our decisions, and cites the cases of *Whittaker* v. *State,* 171 Ark. 762, 286 S. W. 937, and *Bailey* v. *State,* 227 Ark. 889, 302 S. W. 2d 796. In those two cases, we held that the trial court did not err in refusing a request from the defendant for an instruction on assault with intent to rape. Appellant feels that the latter cases express the proper view, and should govern this appeal. It is not here necessary to reconcile the holdings in these cases, for the facts in the instant appeal fall squarely within the holding in *Harrison* v. *State, supra.* There, the evidence on the part of the prosecutrix was to the effect that she was forcibly raped by Harrison, while Harrison admitted intercourse, but insisted that it was with her consent. The jury was instructed that it could find the appellant guilty of the lesser offense of assault with intent to rape, and appellant contended (as is here contended) that he was either guilty of rape, or no crime at all. This court, quoting from *Bradshaw* v. *State, supra,* stated.

" 'An assault with intent to commit rape is included in the charge of rape, and a conviction may be had of the former offense under an indictment for the latter. * * * If it be conceded that the testimony would logically demand a verdict of guilty of rape or nothing, it does not

follow that a conviction of an attempt to rape should be avoided here. The jury had the power to return the verdict and the offense is less than the crime charged.

"It was therefore clearly permissible for the jury to convict appellant of the lesser crime of assault with intent to rape, when charged with rape.'"

In *Lindsey* v. *State*, 213 Ark. 136, 209 S. W. 2d 462, appellant contended that, because the state's evidence went only to the charge of rape, the jury should not have been instructed on the crime of assault with intent to rape. We said,

"Appellant is mistaken in thinking that *attempt* is not included in a charge of rape. He relies upon *Whitaker* v. *State*, 171 Ark. 762, 286 S. W. 937, where Mr. Justice Wood said the trial court correctly instructed that, under the testimony there, the appellant, if not guilty of rape, was entitled to an acquittal. *He did not say, however, that it would have been error to instruct that attempted rape was included in the greater charge.*"[5]

It follows that this point is without merit.

## IV

Appellant complains that the court erred in permitting certain leading questions by the state. All were objected to and exceptions saved. Those questions were as follows:

"Did you resist his efforts to rape you?"

"Now, at this point, may I ask you this, were you wearing what we ordinarily refer to as panties?"

"Young lady, tell the jury whether or not this intercourse was of a painful character."

"Was that painful to you?"[6]

"Did you say in response to a question propounded to you by Mr. Lightle that you screamed or didn't scream at the time he inserted his private in your body?"

---

[5] Emphasis supplied.
[6] This question had reference to appellant's insertion of his finger into the prosecutrix.

In the first place, it does not appear that some of the questions come within the category of leading questions, and certainly, we cannot see how any prejudice resulted to accused. Appellant says that these questions "inflamed" the minds of the jurors, and also states that the first question assumes a fact not supported by testimony, *i.e.*, intercourse without the prosecutrix's consent. As to the last, Miss Carlton certainly testified that the act of intercourse was without her consent, and that she struggled to prevent it. As to the former, there are several facts in evidence, which would likely have been much more persuasive in "inflaming the minds of the jury" — if the jury had been inclined, or subject, to being "inflamed". For instance, it was definitely established by the testimony of Dr. Nathan Poff, who examined Miss Carlton, that she was a virgin prior to the act complained of. From his testimony:

"I examined this white female, and the physical examination revealed a well developed, well nourished white female apparently as stated 18 years old in near hysterical state, quite nervous, tense — after some discussion I was able to calm her down and at this time was able to from examination find a torn blouse a bruised right thumb, a scratch on her right arm, a linear bruise of her right shoulder, scratched inner thigh, approximately the upper third of the thigh. The woman was having some bleeding from the vaginal vault or vaginal bleeding. * * *

"Q. Did you examine the hymen?

A. Yes sir.

Q. Was it intact?

A. No, it was not intact.

Q. Could you determine how recently it had been broken?

A. In my estimation it had recently been broken due to the fact that there was active bleeding at that time.

Q. In your opinion was this young lady a virgin prior to this breaking?

A. In my honest opinion I believe she was." * * *

Q. . . . you say in your honest opinion she was a virgin recently, is it possible she might not have been?

A. Medically speaking or miraculously speaking?

Q. Medically speaking?

A. No.

Q. In your opinion there was no way in which she could not have been a virgin?

A. That's right."

Other facts might also be mentioned; *viz*, that appellant, who was in this state on a visit from the state of Washington, did not tell Miss Carlton that he was married when he made the date with her, and also gave a fictitious name (for the purpose, as he stated, so his wife "wouldn't find out anything"). Of course, it is quite obvious from the verdict entered, that the jury was in no wise prejudiced by any question, or testimony. The penalty of only four years imprisonment under evidence that would have supported a conviction for rape, is ample answer to appellant's contention.

## V

Finally, appellant asserts the trial court erred in refusing to instruct the jury that it was the duty of Miss Carlton "to give alarm, and make an outcry, when she first learned of defendant's desire to have sexual intercourse with her". The trial court properly refused this instruction, for it is not the law. The identical contention was raised in the case of *Jackson* v. *State*, 92 Ark. 71, 122 S. W. 101, and this court held that such an instruction was properly refused, commenting, however, that the failure to make an outcry might be considered in connection with other facts and circumstances as tending to show want of resistance. In the instant case the Cleburne Circuit Court told the jury.

"You are instructed that if you find from the evidence in this case that the prosecutrix failed to make an outcry or complaint at the time of and during the alleged rape,

or immediately thereafter, you should take such fact into consideration with all the other facts and circumstances in the case in passing upon whether or not the alleged sexual intercourse, if any, was with or without the consent of the prosecutrix.''

This was a correct statement of the law, and was the proper instruction to be given to the jury.

While not argued, some other alleged errors are set out in the motion for new trial. These, too, have been examined, and found to be without merit.

Finding no reversible error, the judgment is affirmed.