**KANSAS CITY, Missouri, Respondent,**

v.

**Dale Leroy GARNER, Appellant.**

**No. 24804.**

Kansas City Court of Appeals.

Missouri.

June 3, 1968.

As Modified on Court's Own Motion and Rehearing Denied June 27, 1968.

Dan K. Purdy, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

Herbert C. Hoffman, City Counselor, Richard W. Mason, Jr., Associate City Counselor, Charles A. Lewis, City Prosecutor, Thomas C. Clark, Asst. City Prosecutor, Kansas City, for respondent.

MAUGHMER, Commissioner.

The defendant, Dale Leroy Garner, was charged by information filed in the Municipal Court of Kansas City, Missouri with "stealing by means of deceit" in violation of Section 39.750, Revised Ordinances of Kansas City, Missouri. He was found guilty in that court, with punishment fixed at a fine of $100 and imprisonment in the municipal farm for a term of thirty days. Defendant appealed to the circuit court, there waived a jury, and was again found guilty. The circuit court assessed the pun-

ishment at a fine of $100 and sixty days' imprisonment at the municipal farm. The defendant has appealed.

John Kirkendall, the prosecuting witness, is a blind man, who operates a "stand" on the first floor of the new Federal Building, 601 East 12th Street, Kansas City, Missouri. He testified that he can identify the various coins, but cannot distinguish the different denominations of currency; that on or about January 20, 1967, the defendant, Dale Garrier, bought a package of Camel cigarettes from him and tendered a United States Federal Reserve Note in payment. Kirkendall said he asked the defendant to tell him the bill's denomination and was told it was $5.00. He said defendant made that statement twice, the first time when each of them was holding onto the edge of the piece of paper money, and the second time when Mr. Kirkendall had placed it in his money drawer. Mr. Kirkendall said he gave the defendant $4.65 in change and defendant left the building.

Mr. Eugene L. Paulsen testified that he worked in the Federal Building and approached the "stand" within seconds after defendant's departure. Mr. Kirkendall asked the witness to look at the bill. The witness did so and stated that it was a $1.00 and not a $5.00 bill. Paulsen went outside, saw defendant standing on the sidewalk with his billfold open and counting his money. Paulsen accosted him. Defendant admitted he had just bought a package of cigarettes, said he thought he had given a $5.00 bill in payment, but after counting his money, realized he had given a $1.00 bill, and went back inside with Paulsen and returned four $1.00 bills to Mr. Kirkendall.

The defendant testified and agreed with the descriptions of the incident as related by Kirkendall and Paulsen. He maintained, however, that he had just made an honest mistake which, when it was pointed out to him, he had rectified.

The information charged that the offense occurred "within the corporate limits of Kansas City at or near Harry's Snack Bar, 601 East 12th * * *." No complaint is made by the defendant as to the information itself or as to the ordinance under which defendant was charged and convicted. On appeal defendant presents three assignments of error. He says (a) the evidence is insufficient as a matter of law to sustain the charge and (b) defendant is entitled to the presumption of innocence and must be proven guilty beyond a reasonable doubt. The presumption and degree of proof required in criminal cases constitute rules of criminal law rather than the proper subject matter for an assignment of error. However, it is clear that the evidence presented by the prosecution in this case is sufficient, if believed, to justify the finding that defendant was guilty of stealing by means of deceit. In fact, defendant, in his testimony, did not deny the details of the event, as described by Kirkendall and Paulsen. He rather pleaded a mistake and return of the $4.00 which was, to say the least, unjustifiably taken. An embezzler cannot successfully defend after an apprehension by simply returning the embezzled funds. There is the incident, too, where a horse thief had been caught and convicted. In response to the court's inquiry as to whether or not there was any reason why sentence should not be pronounced, the defendant respondent: "Well, they got the horse back." It is true that we review court tried cases as suits of an equitable nature, but we may not set aside the judgment of the trial court unless it is clearly erroneous and we must give due regard to the opportunity of the trial court to judge credibility. Criminal Procedure, Rule 28.18, V.A.M.R., Civil Rule 73.01, V.A.M.R. Whether the evidence was sufficient or not depends on whether or not the defendant's excuse or claim of honest mistake is believed. The trial court apparently did not accept the explanation. We defer to the trial court's decision on this credibility question. Therefore, the evidence is sufficient.

Defendant's other assignment is that neither the Municipal Court of Kansas City,

Missouri, nor the Circuit Court of Jackson County, Missouri, had jurisdiction to try this case for the reason that the "acts complained of occurred within an enclave of the United States and came within the exclusive jurisdiction of the United States courts." This assignment requires fuller and more complete consideration. We have examined the record in this case and found but two references to the situs of the alleged crime as being in a federal building. We find the following from the testimony of Mr. Kirkendall:

"Q. Where do you work, sir? A. At the Federal Building, 601 East 12th.

"Q. In the new Federal Building? A. Yes.

"Q. What do you do in the new Federal Building? "A. I am an operator of the stand on the first floor."

And from the testimony of witness Paulsen:

"Q. Do you work in the Federal Building? A. Yes, sir, I do.

"Q. Do you know if that is in the city limits of Kansas City, Missouri, Jackson County? A. Yes, it is."

Insofar as the record before us is concerned, the offense occurred in a federal building. The record does not inform us as to the federal government's method of acquisition—whether by grant, purchase, condemnation or otherwise. Nor does the record tell us if the building is a military installation, a post office, or just what it is used for. The State of Missouri has consented to the acquisition of land within its borders for certain purposes by the United States of America. Section 12.010, V.A.M.S. The jurisdiction over land so ceded may continue for so long as the land is owned by the United States of America. Section 12.020, V.A.M.S. However, jurisdiction over such lands does not vest in the United States of America until it accepts such jurisdiction. Title 40 U.S.C.A., Section 255, l.c. pages 99–100 so provides. We quote in part therefrom.

"Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

We find the following comment on this question in 22 C.J.S. Criminal Law § 139, p. 373:

"Generally in order to deprive the state courts of criminal jurisdiction over lands ceded to the United States there must be a surrender of jurisdiction by the state and an acceptance of jurisdiction by the United States. Moreover, where the federal government has not given notice of acceptance of jurisdiction over land acquired by it in a state, the federal courts are without jurisdiction of prosecution for an alleged crime committed therein although a state statute authorizes the United States to take jurisdiction, or at least the United States is without exclusive jurisdiction over the offense, and a state may enforce its criminal laws within the area acquired by the United States."

Numerous courts have held that not only must the state surrender jurisdiction, but

the United States must accept such jurisdiction, else the state is not divested thereof. In People v. Sullivan, 151 Colo. 434, 378 P. 2d 633, the defendant was convicted for the theft of a power hoist on a United States Air Force Command Base. The trial court arrested the judgment for conviction on the ground that the courts of Colorado were without jurisdiction. The Supreme Court of Colorado en banc reversed this order and directed the state court to proceed and said:

"In the instant case it is agreed that as of July 18, 1961, the date the theft was allegedly committed, the United States had acquired title to the NORAD property, *but in the record before us* there is nothing to indicate that the United States as of that date, had accepted exclusive jurisdiction thereover * * *." (Italics ours.)

In Dobbins v. State, 114 Ga.App. 403, 151 S.E.2d 549, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor. The offense admittedly was committed on the premises of a United States Air Force Base. The Court of Appeals of Georgia affirmed the conviction, saying that it specifically approved the holding in People v. Sullivan, supra, and said:

" * * * we hold that, construing these two statutes in pari materia, the State statute amounts to an offer to cede criminal jurisdiction to the United States, which, to become effective, must be accepted in the proper manner by the latter entity, and that *the burden of showing such acceptance rests with the defendant in a criminal case* who contends that the State court is without jurisdiction to try him for an offense against State laws allegedly committed within the confines of the military installation." (Italics ours.)

The Supreme Court of Arkansas in Kurck v. State, Ark., 362 S.W.2d 713 (where the prosecution was for rape) held (1) there must be a ceding of jurisdiction by the state and an acceptance by the federal govern-

ment and (2) the burden is upon defendant to establish lack of jurisdiction by the court. The conviction was affirmed.

In Garcia v. State of Texas, 169 Tex.Cr. R. 30, 331 S.W.2d 53, there was a conviction for assault with intent to rape. The offense, if it occurred, was in the United States Immigration Building at El Paso, Texas, which was under lease to the United States Government. There was no proof that the governor had ceded exclusive jurisdiction to the United States nor that the United States had accepted such. The conviction was affirmed.

In the oral argument before this court, counsel for defendant conceded that if this prosecution had been commenced in the circuit court (a court of general jurisdiction) the burden would be upon defendant to raise the issue and prove lack of jurisdiction. He insists, however, that the circuit court jurisdiction, on appeal from a municipal court, is derivative; that the municipal court is a statutory court of limited jurisdiction and, therefore, its jurisdiction must affirmatively appear. We agree generally with these statements.

■ An information charging commission of a crime in the County of Jackson and State of Missouri, is sufficient to lodge jurisdiction and venue with the Circuit Court of Jackson County, Missouri, in the absence of an allegation and proof of an exception. The opinions cited herein so hold and place the burden upon the defendant to raise the question and prove the exception. Affirming convictions when the record is without proof of an exception can only be construed as placing the burden upon the defendant. The Municipal Court of Kansas City has jurisdiction over all cases arising under the city ordinances. Section 82.300, V.A.M.S. We believe that an information charging violation of a city ordinance and alleging it occurred in the City of Kansas City, Jackson County, Missouri, is sufficient to prima facie lodge jurisdiction and venue with such municipal court. We cannot believe that every such information

must also affirmatively negate every conceivable exception. For example: (1) the offense (although committed in Kansas City, Missouri) did not occur on property owned by the Federal Government, and as to which property Missouri had relinquished and the United States had accepted sovereignty, or (2) the property taken was not federal property, or (3) the assault was not committed upon a federal officer or (4) every other conceivable exception.

 It is our conclusion that under the authorities cited herein and applying the principles of reason, the burden was upon defendant to raise the defense of lack of jurisdiction and then he would be required to prove that Missouri had ceded and the United States had accepted exclusive jurisdiction. We cannot believe it is the duty of this court to search out the evidence as to the exact present status of the title to the real estate upon which the federal building stands. In our opinion we have neither the obligation nor the right to go outside the record for evidence which might enable us to determine the respective sovereignty and jurisdiction of Missouri and the United States regarding the building in question. Defendant's jurisdictional defense is not roped securely to facts proven of record but hangs by the thread of possibility. Unless timely raised and proved, it is unavailing.

One of the cases cited by appellant is State ex rel. Harris v. Galloway, Mo. App., 24 S.W.2d 710. In that case the action was brought in the justice court on a promissory note. The court held the *presumption* would be that the justice heard evidence as to residence and the defendant lived in the township in which suit was brought, or in an adjoining township, and hence the justice would have jurisdiction. We do not believe this case helps the contentions of appellant.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the Court.

All concur.