The Honorable Mike Huckabee Governor State Capitol, Ste. 250 Little Rock, AR 72201
Dear Governor Huckabee:
I am writing in response to your request for my official opinion on the following two questions:
 1. In light of the fact that the U.S. Bureau of Prisons has acquired an additional 545 acres of land adjacent to the existing Federal Correctional Institution at Forrest City, Arkansas, has the State of Arkansas already ceded concurrent jurisdiction over this newly acquired land to the United States through A.C.A. 22-7-226 (Repl. 2004), or does the state still have to comply with 22-7-102 or any other statute in order to successfully cede concurrent jurisdiction to the United States?
 2. Which, if any, of the steps set out in 22-7-102 must be followed in this instance to effect the transfer of concurrent jurisdiction over the newly acquired land to the United States?
RESPONSE
With respect to your first question, I believe the State of Arkansas has already ceded concurrent jurisdiction over the newly acquired property pursuant to A.C.A § 22-7-226. This cession will be effective only when the United States provides notice of acceptance. A.C.A § 22-7-207. With respect to your second question, I believe the United States should give notice of acceptance as specified in A.C.A § 22-7-102 and that the Governor should file the notices referenced in that statute. However, given that the legislature has already ceded legislative jurisdiction over this property subject to the United States' acceptance, I do not believe the Governor need consult the Attorney General or submit the transaction to the General Assembly for approval.
Question 1: In light of the fact that the U.S. Bureau of Prisons hasacquired an additional 545 acres of land adjacent to the existing FederalCorrectional Institution at Forrest City, Arkansas, has the State ofArkansas already ceded concurrent jurisdiction over this newly acquiredland to the United States through A.C.A. 22-7-226 (Repl. 2004), or doesthe state still have to comply with 22-7-102 or any other statute inorder to successfully cede concurrent jurisdiction to the United States?
Article 1, § 8, cl. 17 of the United States Constitution invests Congress with the following powers:
 To exercise exclusive legislation in all cases whatsoever, over such district (not exceeding ten miles square) as may, by cession of particular states, and the acceptance of congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings[.]
(Emphasis added.) As the United States Supreme Court noted in UnitedStates v. Carmack, 329 U.S. 230, 248 (1946):
 If the Federal Government desires exclusive legislative jurisdiction over land acquired by it, the Constitution indicates that the consent of the state in which the land is located is necessary. Art. I, § 8, Cl. 17, provides that" The Congress shall have Power . . . To exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;. . . ." See Stockton v. Baltimore N.Y.R. Co., 32 F. 9, 18, appeal dismissed, 140 U.S. 699. See also, Joint Resolution of September 11, 1841, 5 Stat. 468, and Rev. Stat. § 355, which formerly required the consent of state legislatures to federal purchases of certain sites as a condition of expending federal funds to pay for them. Since February 1, 1940, such consent has not been required except where the United States has sought "exclusive or partial" legislative jurisdiction. Unless and until the United States accepts such jurisdiction over lands acquired since February 1, 1940, it is presumed conclusively that no such jurisdiction has been accepted. 54 Stat. 19; 54 Stat. 1083; 40 U.S.C. § 255.
In Adams v. United States, 319 U.S. 312, 314 (1943), the Supreme Court acknowledged that the referenced "partial jurisdiction" is not distinguishable from "concurrent jurisdiction."
The General Assembly has enacted various statutes that deal with the cession of legislative jurisdiction to the federal government. Section22-7-101 of the Code, enacted as Acts 1903, No. 180, §§ 1 and 2, provides:
 (a) The State of Arkansas consents to the purchase by the United States of any site or ground for the erection of any armory, arsenal, fort, fortification, navy yard, customhouse, lighthouse, lock, dam, fish hatchery, or other public buildings of any kind.
 (b) The jurisdiction of this state within and over all grounds purchased by the United States within the limits of this state is ceded to the United States, except that this cession of jurisdiction shall not prevent execution of any process of this state, civil or criminal, upon any person who may be on these grounds.
 (c) This state releases and relinquishes its right to tax any site, grounds, or real estate, and all improvements which may be there or erected there during the time the United States remains the owner thereof.
This statute, which amounts to a wholesale cession of limited jurisdiction to the federal government with no consideration of individual cases, has never been expressly repealed. However, as the court noted in Kurck v. State, 235 Ark. 688, 691-92, 362 S.W.2d 713
(1962), the legislature in 1959 established a different procedure for ceding a more limited concurrent jurisdiction on a case-by-case basis. With respect to such properties generally, A.C.A § 22-7-102 (Repl. 1996), which was enacted as Acts 1959, No. 256, §§ 1-3, provides:
 (a)(1) In order to acquire all or any measure of legislative jurisdiction of the kind addressed in Article I, Section 8, Clause 17, of the Constitution of the United States over any land or other area, or in order to relinquish that legislative jurisdiction or any measure thereof which may be vested in the United States, the United States
acting through a duly authorized department, agency, or officer shall file a notice of intention to acquire or relinquish legislative jurisdiction, together with a sufficient number of duly authenticated copies thereof to meet the recording requirements of subsection (c) of this section, with the Governor.
 (2) The notice shall contain a description adequate to permit accurate identification of the boundaries of the land or other area for which the change in jurisdictional status is sought and a precise statement of the measure of legislative jurisdiction sought to be transferred.
 (3) Immediately upon receipt of the notice, the Governor shall furnish the Attorney General with a copy and shall request his comments and recommendations thereon.
 (b)(1) The Governor shall transmit the notice, together with his comments and recommendations, if any, and the comments and recommendations of the Attorney General, if any, to the next session of the General Assembly, which shall be constitutionally competent to consider the notice, comments, and recommendations.
 (2) Unless prior to the expiration of the legislative session to which the notice is transmitted, the General Assembly has adopted an act approving the transfer of legislative jurisdiction as proposed in the notice, the transfer shall not be effective.
 (c) The Governor shall cause a duly authenticated copy of the notice and act to be recorded in the office of the recorder of the county where the land or other area affected by the transfer of jurisdiction is situated, and upon such recordation, the transfer of jurisdiction shall take effect.
 (d) The Governor shall cause copies of all documents recorded pursuant to this section to be filed with the Secretary of State.
 (e) In no event shall any transfer of legislative jurisdiction between the United States and this state take effect, nor shall the Governor transmit any notice proposing such a transfer pursuant to subsection (b) of this section unless, under the applicable laws of the United States:
 (1) This state shall have jurisdiction to tax private persons, private transactions, and private property, real and personal, resident, occurring, or situated within the land or other area to the same extent that this state has jurisdiction to tax persons, transactions, and property, resident, occurring, or situated generally within this state;
 (2) Any civil or criminal process lawfully issued by competent authority of this state or any of its subdivisions may be served and executed within the land or other area to the same extent and with the same effect as the process may be served and executed generally within this state, except that the service and execution of process within land or other areas over which the federal government exercises jurisdiction shall be subject to such rules and regulations issued by authorized officers of the federal government, or of any department, independent establishment, or agency thereof, as may be reasonably necessary to prevent interference with the carrying out of federal functions;
 (3) This state shall exercise over the land or other area the same legislative jurisdiction which it exercises over land or other areas generally within this state, except that the United States shall not be required to forego such measure of exclusive legislative jurisdiction as may be vested in or retained by it over the land or other area pursuant to this section, and this state's exercise of jurisdiction shall be without prejudice to the right of the United States to assert and exercise such concurrent legislative jurisdiction as may be vested in or retained by it over the land or other area.
 (f) Nothing in this section shall be construed to prevent or impair any transfer of legislative jurisdiction to this state occurring by operation of law.
(Emphasis added.)
However, notwithstanding the generally applicable statute just quoted, specifically with respect to property acquired by the federal government in connection with the operation of the Federal Correctional Institution in Forrest City, the legislature enacted Acts 1997, No. 215, §§ 1 and 2, which are codified as follows:
 The State of Arkansas hereby cedes concurrent jurisdiction to the United States over the lands, waters, and buildings previously or hereinafter acquired for the Federal Bureau of Prisons, Federal Correctional Institution in Forrest City, St. Francis County, Arkansas, and over all future lands, waters, and buildings hereafter acquired, leased, or occupied, whether by purchase, condemnation, or otherwise, by or on behalf of the United States for the Federal Bureau of Prisons.
A.C.A § 22-7-226 (Supp. 2003).
 Cession of jurisdiction pursuant to § 22-7-226 above shall take effect only upon acceptance of such jurisdiction by the United States. Federal jurisdiction so ceded shall end as to any such lands, waters, or buildings, or portions thereof, that cease to be owned, leased, or occupied by or on behalf of the United States.
A.C.A § 22-7-227 (Supp. 2003).
Under the statutes just recited, ceding concurrent jurisdiction over property acquired for the Federal Correctional Institution in Forrest City is automatic, subject only to the condition that the United States accept the cession. In enacting this legislation, the General Assembly apparently concluded that it had already determined the advisability of ceding jurisdiction over property purchased for the Federal Correctional Institution in Forrest City and that the procedure for purchasing additional property in the future should be expedited.
One question that immediately arises regarding the just recited statutes is whether they might be characterized as impermissible "local" or "special" legislation in that they focuses exclusively on the Federal Correctional Institution in Forrest City. Amendment 14 to the Arkansas Constitution provides:
 Local or special acts prohibited — Rights to repeal acts by legislature.
 The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.
The Arkansas Supreme Court has interpreted the terms "local" and "special," as used in Amendment 14, as follows:
 An act is special if, by some inherent limitation or classification, it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate, and the legislation is local if it applies to any division or subdivision of the state less than the whole.[1]
Arkansas HSC v. Regional Care Facilities, Inc., 351 Ark. 331, 339,93 S.W.3d 672 (2002), citing Hall v. Tucker, 336 Ark. 112, 983 S.W.2d 432
(1999); Fayetteville Sch. Dist. v. Arkansas State Bd. of Educ.,313 Ark. 1, 852 S.W.2d 122 (1993); Owen v. Dalton, 296 Ark. 351,757 S.W.2d 921 (1988). However, the court has further explained: "Merely because a statute ultimately affects less than all of the state's territory does not necessarily render it local or special legislation."Arkansas HSC, 351 Ark. at 339, citingBoyd v. Weiss, 333 Ark. 684, 971 S.W.2d 237
(1998); Littleton v. Blanton, 281 Ark. 395, 665 S.W.2d 239 (1984).
The court has developed a "rational basis" standard for analyzing the question of whether legislation is impermissibly special or local under Amendment 14. The court has described that standard as follows:
 [W]e have consistently held that an act of the General Assembly . . . that applies to only a portion of the state is constitutional if the reason for limiting the act to one area is rationally related to the purposes of that act. McCutchen v. Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997). Although a law may be limited in effect only to a few classifications, it is not necessarily special or local legislation if the classification is not arbitrary and bears a reasonable relation to the purpose of the law. Foster v. Jefferson County Bd. of Election Comm'rs, 328 Ark. 223, 944 S.W.2d 93 (1997).
Arkansas HSC, 351 Ark. at 339.
Although I am not a finder of fact, I believe that a reviewing court might well determine that singling out the Federal Correctional Institution in Forrest City for what amounts to an expedited procedure for ceding legislative jurisdiction to the United States would pass muster under the rational-basis standard of review discussed above. I assume the legislature simply concluded that the cession of legislative jurisdiction with respect to this facility would be virtually foregone, thus rendering unnecessary the somewhat cumbersome procedure set forth in A.C.A § 22-7-102. See generally subchapter 2 of chapter 7 of title 22 of the Code (setting up similar expedited procedures for various other specifically named properties). In any event, statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); ACW,Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770 (1997). In accordance with this principle, I will treat the statutes at issue as constitutional in the ensuing discussion.
In interpreting the interrelationships among the above quoted statutes, I am guided by several principles of statutory interpretation. First, a statute is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. Edwards v. State,347 Ark. 364, 64 S.W.3d 706 (2002). Moreover, a general statute will normally not apply where there is a specific statute governing a particular subject matter. Donoho v. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). In addition, legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993);City of Fort Smith v. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). Finally, the provisions of an act adopted later in time ordinarily repeal the conflicting provisions of an earlier act. Daniels v. City of FortSmith, 268 Ark. 157, 594 S.W.2d 238 (1980).
In the present case, I consider there to be an irreconcilable conflict between certain provisions of A.C.A § 22-7-102, which imposes upon the legislature an obligation to consider the cession of legislative jurisdiction over each affected parcel of property during the legislative session in which the United States files notice of its intent to acquire legislative jurisdiction, and A.C.A §§ 22-7-226 and -227, which cede to the federal government in wholesale fashion concurrent legislative jurisdiction over all Forrest City Correctional Institute property the United States may choose to designate as subject to its legislative jurisdiction. Applying the principles of statutory construction set forth above, I believe A.C.A §§ 22-7-226 and -227, as the most recently enacted legislation and as more particularly addressing the circumstances at the Federal Correctional Institution in Forrest City, should control over prior general legislation. Specifically in response to your question, then, I believe the State of Arkansas has already ceded concurrent jurisdiction over the newly acquired 545 acres of land at issue. However, as expressly set forth in A.C.A § 22-7-227, this cession of jurisdiction will take effect only upon acceptance of the jurisdiction by the United States. Given that A.C.A. §§ 22-7-226 and — 227 are silent regarding the appropriate mode of accepting jurisdiction, I believe the notice provisions set forth at A.C.A § 22-7-102(a) should apply.
Question 2: Which, if any, of the steps set out in 22-7-102 mustbe followed in this instance to effect the transfer of concurrentjurisdiction over the newly acquired land to the United States?
As reflected immediately above, I believe the United States should indicate its acceptance of legislative jurisdiction by complying with the notice provision set forth at A.C.A § 22-7-102(a). In light of the provisions of A.C.A §§ 22-7-226 and -227, I do not believe the Governor need consult with the Attorney General or the legislature in order to effect the cession. I further believe the Governor should comply with the filing requirements set forth at A.C.A § 22-7-102(c) and -102(d).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] I should note that under this definition, the legislation contemplated in A.C.A § 22-7-102 approving each cession of legislative jurisdiction would likewise qualify as "local" in its effects, because it would in each instance involve only one area of the state. Such legislation would be necessarily "local" because the U.S. Constitution, as noted above, expressly requires legislative approval of each discrete cession of legislative jurisdiction to the United States. As discussedinfra, the operative inquiry with respect to state constitutional mandates in each such instance would be whether a rational basis supports ceding legislative jurisdiction over the particular property at issue.