**Charles R. WOLLASTON, Plaintiff In Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

**No. A-12897.**

Court of Criminal Appeals of Oklahoma.

Jan. 7, 1961.

See, also Okl.Cr., 350 P.2d 959.

1112

Stansell Whiteside, Altus, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., Loys Criswell, County Atty., Jackson County, Altus, for defendant in error.

BRETT, Judge.

This is an appeal by Charles R. Wollaston, plaintiff in error, defendant below, from a judgment and sentence of three years in the state penitentiary for the crime of indecent exposure. The defendant was charged by information in the district court of Jackson County, Oklahoma with the said offense, allegedly committed in said County and State on September 5, 1959. In the information he was charged with indecent exposure of his private parts to Nancy Barnes, a female twelve years of age. He was tried by a jury and convicted. The jury being unable to agree on the punishment, left the assessment thereof to the trial court. Judgment and sentence was thereupon fixed by the court at three years, from which this appeal has been perfected.

The defendant complains of the trial court, that it permitted to be introduced in the State's case in chief, evidence of two other similar offenses, with which he was not charged, represented to have been committed at or near the time of the offense upon which he was on trial. Said offenses were, to wit: On August 31, 1959 and September 7, 1959, all in Altus, Oklahoma, at about 5:00 p. m. at other places. The record shows that the offenses were committed in almost the identical manner as the offense for which defendant was on trial. The crime with which defendant is charged occurred on September 5, 1959 at the approximate time of 11:45 a. m.

Briefly, it appears that the defendant was driving down an Altus, Oklahoma street, where Nancy Barnes (twelve years old and in the seventh grade), was waiting to cross the street. The defendant pulled up to the curb, blocking the way. He stopped and said, "Look here", looking down at his lap. Nancy first thought that he had a kitten, but then saw that his pants were unzipped and he was exposing himself. The defendant then rapidly drove away. She immediately told her mother and they went to a policeman's home and told him of the offense. The police officer and the girl's mother established the time and the day definitely as hereinbefore set forth. The policeman died the next morning.

On September 12 the complainant was driving down the streets of Altus with her mother when she saw the defendant and his car, and she told her mother, "there is that man". Apparently the defendant knew he was recognized and realized that he was being pursued and tried to avoid them. He sped away and kept looking over his shoulder, but they followed him to his home, got his automobile license number and gave it to the police. In a police line-up the Barnes girl positively identified the accused.

The State called two other witnesses, Phyllis Maxwell, about ten years of age, and Judy Antley, eleven years of age. They related that at a different time and place they both saw the defendant expose himself to them. In those instances he blocked their way in crossing the street, and asked Phyllis if she could tell him where Birch Street was located. When she came near his automobile he then exposed himself. She, and also the girl Mary McCaskill with whom she was playing, saw the exposure. They were so embarrassed that she said they decided not to tell their parents, but Mary went home with Phyllis to spend the night and they were going to sleep out, but she was so frightened by the incident that she knew she could not sleep until she had told her mother. She then told her mother and the next day they went to the County Attorney's office and informed the County Attorney and the sheriff about the incident. Phyllis Maxwell said that she was so terrified by the experience that she could not forget the man's face.

The exposure to Judy Antley occurred on September 7, 1959. The defendant after driving around the block and signalling two or three times to Judy and Sandra Spradlin, blocked their way across the street as they were crossing and asked the Spradlin girl, nine years old, where Glendon Street was. She called Judy, saying, "Judy, come here a minute". As Judy approached, the man asked her the same question. Judy told him that a man on a nearby porch might know, and then defendant said, "Look, have you ever seen one of these?" When she looked, defendant was exposing himself and had his hands on his private parts. She testified that she had sufficient conversation with defendant to be positive that he was the man. Both the Maxwell girl and the Antley girl picked the defendant out of a police line-up and positively identified him in court.

The defendant testified in his own behalf that he was a member of the United States Air Force as an instrument man, and was employed at the Altus Air Force Base. He positively denied, not only the offense charged, but the other offenses or the Maxwell and Antley incidents. The defendant had witnesses who testified as to his good reputation. Further evidence on behalf of

the defendant will be hereinafter referred to in connection with his defense.

The information was based upon the provision of 21 O.S.A.1951 § 1021:

"Every person who wilfully and lewdly either: First, exposes his person, or private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby * * * upon conviction therefor shall be punished by the imposition of a fine not less than Ten Dollars ($10.00) nor more than One Thousand Dollars ($1,000.00) or by imprisonment for not less than thirty (30) days nor more than ten (10) years, or by both such fine and imprisonment."

The defense herein was based upon mistaken identity, and the special plea of an alibi. It was apparent from the outset of the trial that these defenses would be relied upon, and the cross-examination of the State witnesses was designed to shake the State's identification of the defendant, which the defense was not able to do.

The defendant contended in his testimony that he could not have been guilty of the charge for the reason that he was engaged in military drill at the Altus Air Force Base until 11:20 a. m. This was testified to by the drill-master. Defendant offered proof by his wife that he was at home at the time of the alleged offense on September 5, 1959. His wife testified that he arrived home at 11:25 a. m. and, except for a short time when together they went to the I. G. A. grocery store for a loaf of bread. She further related that the defendant was at home until 15 minutes until 1:00 p. m., when she returned him to the Base.

It is well to observe that although the defendant was at the Base until 11:20 a. m., he could have readily driven from the Air Base and been at the scene of the alleged crime at 11:45, since it was only about four miles on a paved road from the Air Force Base into Altus, Oklahoma. His wife, of course, could throw no light on the other two offenses of August 31, and September

7, 1959. The defendant could offer no Post records to show that he was on duty at the Base on August 31, 1959. He alone testified that he was on duty at the Base on that occasion, and the record discloses no attempt to account for his whereabouts on September 7, 1959, except to deny that he exposed himself. Thus, an issue of fact was raised for the jury which they decided adversely to the defendant.

■ The trial court in its instruction No. 3 limited the evidence of the Antley and Maxwell offenses for the purpose of showing a common scheme, plan or intent on part of defendant. Specifically, he instructed the jury that "a person may not be convicted on the commission of one offense by any proof tending to show that he may or may not have committed other offenses." The defendant cites the general rule announced in 22 C.J.S. Criminal Law § 682, p. 1084, as follows:

"The general rule is that evidence that accused has committed another crime independent of, and unconnected with, the one on trial is inadmissible; it is not competent to prove one crime by proving another."

To this rule there are well recognized exceptions. Among these exceptions is the rule that such evidence is admissible to show a common plan of operation or system of common criminal action, or where the evidence tends to connect the defendant with the crime, or to identify the accused with the crime; where the other offenses are not too remote in point of time and place, and where the issues are intensified by the special defense of alibi. 22 C.J.S. Criminal Law § 683, p. 1089; § 684, p. 1097; § 688, p. 1109; § 691u (6) Indecent Exposure, p. 1160.

Cited in support of the general rule is the case of Quinn v. State, 54 Okl.Cr. 179, 16 P.2d 591, 596. This case is clearly distinguishable from the case at bar. Therein, the crime charged was murder, and the other offense was rape committed thirty days before the alleged murder. The Court in this regard distinguished the case

from cases of such character as the instant case when it said:

> "* * * that would not tend to show a plan or scheme; nor would it serve to identify the defendant in the commission of the murder 30 days thereafter. We have been unable to find any cases where evidence of such widely separated and dissimilar crimes has been held to be competent in the trial of a case of this character."

■ For these reasons this Court said the prior offense in the Quinn case was not relevant. Herein, the evidence of the two other offenses is relevant to the issues involved, and in the instant case the evidence of the other offenses does tend to identify the defendant with the crime alleged.

It is also well to note that under such circumstances as herein involved, the evidence is relevant to the State's case in Chief, since identification was one of the elements essential to be established in chief in proving the State's case. There shall be more said as to the relevancy of the evidence later on.

In point of time the Maxwell and Antley offenses are not too remote. They are essential in character to show a common plan or scheme of operation, effected in substantially the same method, at or near the same place, and tend to connect defendant with the offense charged, and relate to identity of the defendant.

The defendant also relies on Davidson v. State, 20 Okl.Cr. 368, 209 P. 779. That case discloses there was no attempt on the part of the court to confine the conclusion of guilt to the offense charged, while herein the finding of guilt was expressly limited to the charge of September 5, 1959. Hence, the Davidson case is clearly not applicable herein.

The defendant further relies on the case of Bunn v. State, 85 Okl.Cr. 14, 184 P.2d 621, 625. This is also an exposure case which at first seems to strongly support the defendant's contentions. This Court in that case said that evidence of other offenses was not admissible. This case involved two other cases of exposure of defendant. But, that case did not involve the question of identity of defendant. Defendant admitted that he was the person suspected of committing an indecent exposure at the time and place alleged; but he defended that he was in a hurry to get to the toilet, and that he did not realize that he had exposed himself, if he did. As to the other two offenses which the court in the Bunn case admitted into evidence, the alibi evidence established from Armour and Company records that Bunn was at the time and dates in question working in the packing plant in the southwest part of Oklahoma City, several miles from the State Capitol street-car waiting shed, where the crime was allegedly committed. Under these conditions the trial court should have given defendant the benefit of the doubt as to the admissibility of the two other offenses. Clearly these offenses under the facts adduced in that case were not admissible. So, also, the defendant in the instant case was not in the position of Bunn, to establish his presence at the Altus Air Base by positive records. In the Bunn case, under such conditions, the Court said, "It takes a strange construction * * * which would make the other alleged offenses admissible in evidence against the defendant." It is quite obvious, in face of the positive records of Armour & Company, that the defendant was working in the plant at the time the two other offenses were allegedly committed. The evidence in the Bunn trial was conclusive as to his alibi with reference to the other alleged offenses, and this Court might have said the trial court should have so held. Therein, is the distinction between the Bunn case and the case at bar. We do not think it is necessary to consider the other cases relied upon by defendant since they are not sex cases involving indecent exposure and in view of the further fact that Daves v. State, 77 Okl.Cr. 343, 141 P.2d 603, 605 is in point with the case at bar. This case involved an indecent exposure by defendant to some children playing in a Tulsa, Oklahoma park, at different times and dates.

The Court clearly stated the rule in paragraphs 5 and 6:

"Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish a common scheme or plan, embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or to connect the defendant with the commission of the crime charged.

"Evidence is competent and admissible which tends directly to prove the guilt of the accused, although it proves or tends to prove him guilty of another and distinct offense, and this is true, although the admission of such testimony may arouse resentment in the minds of the jury and result in a greater punishment than would ordinarily be assessed."

See also page 352 of the Oklahoma Criminal Report, page 609 of 141 P.2d, where the Court said:

"From the above statement of the evidence, it cannot be said that the same is insufficient to sustain the verdict. If the jury believed the testimony of the three children who positively identified the defendant, and their testimony is not unreasonable, they had the right to come to the conclusion that defendant was guilty as charged. Their evidence is strongly corroborated by that of the police officers, who found the defendant at the park on July 30th, beckoning to these identical children. His being there on this date, having come in his own car, is inconsistent with his defense that he had not theretofore gone to the park during the noon hour, and is strong circumstantial evidence that he was there on prior dates, as related by the children, especially that part of the evidence of the officers that he was seen beckoning to these children.

"* * * It is contended that the evidence of the three children was with reference to events which occurred at different times and dates, and therefore constituted separate and distinct crimes. We have carefully examined this evidence, and do not find it to be such as to subject it to this objection. It is true that they testified to two different times, but they would come within the rule that they were a part of a common scheme and plan * * *."

While we are not in disagreement with the foregoing reason for the admissibility of the evidence of other offenses, academically speaking, we believe a better and further reason this evidence was admissible was for the purpose of identification. On that basis, especially in point with the case at bar, is Barnett v. State of Ohio, 104 Ohio St. 298, 135 N.E. 647, 649, 27 A.L.R. 351. This is a well reasoned case expressive of our view in this type of case, particularly as regards the admissibility of the other offenses to establish identity and the relevancy of other offenses in such cases. The Barnett case involved the crime of sodomy, allegedly committed upon a little girl six and a half years of age. To substantiate the burden of proving the identity of defendant, the State called and examined, as witnesses, several little girls varying in ages from six to ten years. The court admitted this testimony, and was sustained by the Supreme Court of Ohio in so doing. Therein the Supreme Court of Ohio said:

"* * * The law will not suffer itself to be handicapped by limiting the means or methods of identification to physical characteristics. Where the identity of the defendant is the question in issue, any fact which tends to establish the identity has probative value and is none the less competent evidence, because it establishes a collateral fact nor because proof of such fact may incidentally involve proof of the commission of another offense. If the fact tends to establish the identity of the accused, it is competent evidence, no matter what else it may prove, and facts of that character, when weighed with the other evidence may justify

the jury in finding identity to be established beyond a reasonable doubt.

"No rule of criminal law is more firmly established then that, in general, evidence that the defendant committed at another time an independent crime not charged in the indictment, although of the same nature, does not in and of itself even tend to show that he is guilty of the crime charged, but it is equally well settled that this general rule has some important exceptions, and these exceptions include cases where motive, intent, or identity is involved. It is quite true that the exceptions which have been established ought not to be enlarged, and the courts should exercise great caution in admitting evidence under any one of the recognized exceptions. If the testimony of these children, other than the prosecuting witness, does not tend to identify the defendant as the person who committed the crime charged in the indictment, it was manifestly incompetent and prejudicial. It seems, however, to the court that such evidence does tend to identify the accused as the one who committed the offense set forth in the indictment. The weight of the evidence, of course would be for the jury. 1 Wigmore, Ev. §§ 412, 413; 22 R.C.L. 1204; Miller v. State, 13 Okl.Cr. 176, 163 P. 131, L.R. A.1917D, 383; State v. Lapage, 57 N. H. 245, 24 Am.Rep. 69 [2 Am.Crim. Rep. 506]; and State v. Reineke, 89 Ohio St. 390, 398, 106 N.E. 52, L.R.A. 1915A, 138.

"These are but a sample of authorities which enunciate or apply the principle. In R.C.L. cited supra, the learned author of the article, after announcing the rule prohibiting evidence of other offenses, states that the rule should not be followed blindly and that evidence should not be rejected on the sole ground that it shows the commission of another crime and that evidence of another crime is admissible when it tends to identify the accused. With full realization of the importance of this class of testimony and of the weight with which it bears against the defendant, we are convinced that it is competent evidence in this case on the question of identity and that no error was committed in its reception.

\*   \*   \*   \*   \*   \*

"It is more or less a matter of common knowledge, among those who have made a study of sexual perversion as it manifests itself in human degenerates, that each sexual pervert follows some habitual, unnatural method of gratifying his perverted passion. It may be unnatural commerce with one class of beasts or another class of beasts; it may be by one mature male upon another mature male; and it may be, which is to-day of too frequent occurrence, a degenerate sexual commerce with little boys or little girls.

"Just as the professional bank robber uses habitually certain methods in his course of criminal conduct, so the sexual pervert, as a general rule, confines himself to a certain limited line, a certain habitual form of sexual degeneracy, from which he rarely, if ever, departs; and those methods that he habitually employs leave their indicia, their footprints, or finger marks, their traces, in one form or another, of his personal criminal identity."

In Rhine v. State, Okl.Cr., 336 P.2d 913, we said, in the body of the opinion, that among the exceptions to the general rule against the introduction of testimony concerning other offenses, one arises where other offense, or offenses tend to identify accused with the offense charged.

■ One of the essential elements of proof in this type of case is the corpus delicti, which we have held cannot be established by other offenses. Lewis v. State, Okl. Cr., 335 P.2d 654. The trial court expressly excluded evidence of other offenses from such consideration by the limitation placed thereon by instruction No. 3. The corpus delicti here was established by Nancy

Barnes. This evidence of other offense was admissible only to establish beyond a reasonable doubt the defendant's identity in the incident of exposure to Nancy Barnes. The proof of the other offenses in this case meets the specifications of the law as to relevancy in a case of this character. In Barnett v. State, *supra*, the requirement as to relevancy is set forth as follows:

"* * * Jeremy Bentham's old definition can hardly be improved on to-day:

"'Any matter of fact, the effect, tendency, or design of which, when presented to the mind, is to produce a persuasion concerning the existence of some other matter of fact—a persuasion either affirmative or disaffirmative of its existence.'

"Greenleaf's definition is:

"'All the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved.'

\* \* \* \* \* \*

"Jones, in the first volume of his excellent work, Commentaries on Evidence, deals with this subject of the relevancy of other crimes to prove the crime charged in the affidavit, information or indictment. Beginning with section 143, where he quotes Bishop on Criminal Procedure as to the general doctrine, he continues as follows:

"'It is that, though the prisoner is not to be prejudiced in the eyes of the jury by the needless admission of testimony tending to prove another crime, yet whenever the evidence which tends to prove the other crime tends also to prove this one, not merely by showing the prisoner to be a bad man, but by showing the particular bad intent to have existed in his mind at the time when he did the act complained of, it is admissible; and it is also admissible if it really tends thus, as in the facts of most cases it does not, to prove the act itself.'

"This doctrine has been applied by substantially all the courts whenever there has been a fraudulent intent in connection with property, such as uttering counterfeit money, receiving stolen property knowing it to have been stolen, embezzlement, obtaining property by false pretenses, and the like.

"The courts are practically uniform in admitting evidence of that character as between the defendant and other persons not too remote, *as tending to show the system, means, or method of operation having common characteristics, and all pointing to the guilt of the defendant*. Touching this general doctrine, Jones, in section 144, vol. I observes as follows:

"'A man who has formed the plan of attempting [attacking] the chastity of women, and carried it into effect by a series of crimes, can be and should be no more protected than the one who has planned to financially victimize the inhabitants of a locality.'

\* \* \* \* \* \*

"If other similar offenses are competent, as the authorities generally hold, to show a fraudulent intent in the wrongful taking of property, why should not other offenses be equally competent to show the degenerate intent in the wrongful taking of virtue, and even the lives of little children?

"The distinction drawn by some courts as to these two different wrongful takings is a distinction without a difference, *except that the public welfare and public virtue should have, at least, equal protection to private property.*

"It was said 19 centuries ago: 'Is not the life more than meat, and the body than raiment?' Matt. 6:25. A twentieth century court would hardly feel at liberty to reverse such a wholesome doctrine when applied to such a concrete case as the one at bar." [Emphasis now supplied.]

The defendant concedes the importance of this evidence for the purpose of identity. On page nine of his brief we find the following:

"It is possible that the jury might have convicted this defendant even without the testimony concerning the other two offenses, however, it is equally possible that the jury would not be willing to accept the identification of the defendant by a twelve-year old child without the inflammatory and prejudicial evidence of other offenses of a similar nature, and we contend that this defendant is entitled to a trial without such inflammatory and prejudicial evidence and testimony included therein."

The Ohio Court in Barnett v. State, supra, said:

"Lord Coke said many years ago:

" 'Reason is the life of the law; nay, the common law itself is nothing else but reason. * * * The law, which is the perfection of reason.'

"How can it be said that the lascivious, bestial disposition of the male person who was habitually committing similar crimes upon little girls in Toledo and vicinity near the time charged in this indictment did not, with reason and in common knowledge and experience, point strongly toward the defendant as being the person who committed the offense charged in the indictment? It was committed by someone with an automobile bearing a certain number, absolutely identified, operating in a manner and by means substantially identical, at the same time of day, upon the pupils of a certain school and neighborhood, taken to a certain unfrequented place in or about Toledo, and repeatedly exhibiting his bestiality in his conduct toward these children. * * *

" * * * A wild ferocious animal that has escaped with all its bestial instincts puts in panic the safety of the people of any community infested thereby; but no alarm or jeopardy of the safety, virtue, and very lives of the children of a community could be more seriously and vitally threatened than by the type of sexual pervert disclosed by this record."

Such is the situation in the case at bar. Every resort within the law should be made available to the trial courts in their efforts to punish and discourage the evil suggestion of the exhibitionist to innocent little children.

The Barnett case takes what we believe is the common sense, necessitous view, in this modern era, laboring under the ever increasing occurrence of such crimes. It places as great a premium on the virtue of little children and the protection of their innocent young lives as it does on property, which we have sought in numerous opinions (infra) to shield and protect. Virtue is the most priceless jewel in the female diadem, and innocence is that of little children which despoilers, such as exhibitionists seek to mar by the indicia of evil suggestions in the satisfaction of their bestial passions.

This Court has repeatedly placed its approval upon evidence of other offenses where relevant in crimes affecting property, such as embezzlement, forgery, and obtaining money under false pretenses. Byers v. State, 78 Okl.Cr. 267, 147 P.2d 185, 188; Boyer v. State, 68 Okl.Cr. 220, 97 P.2d 779; Chappell v. State, 74 Okl.Cr. 213, 124 P.2d 742. We are of the opinion that we should do no less for the protection of young children of Oklahoma. We believe that we should exercise as great concern about the despoilment of the innocence of our children as we do for the loss of property, when the law and the facts will warrant us in doing so.

The case of State v. Frizell, 132 Kan. 261, 295 P. 658, lays down a principle in a bank robbery case involving other offenses which is clearly applicable herein. That rule is stated in paragraph 2 of the syllabus by the Court:

"Where there is no question as to the commission of the crime charged and the only question of fact left for determination is whether it was done by the defendant, the matter of identity of person becomes the principal issue of fact in the case, and that issue may be further intensified by the special plea of alibi, and under such circumstances the evidence of another similar offense may be admissible with proper instructions as to the limited purpose for which it may be used by the jury."

The judgment was reversed for other reasons. In the body of the opinion, the Court said:

"It would serve no good purpose to continue this reference to decisions in recognition of the exceptional purposes as to showing identity of persons or crime, intent, system, or plan. The exceptions extend to sex cases showing lustful tendencies, to embezzlement cases showing intent and system, to forgery, and arson cases showing plan and motive, and *to any or all of them showing identity of person or crime.*

"We conclude that following the long line of specific precedents, and without any inclination or intention to extend the already too liberal list of exceptions along these lines, the evidence in this case as to the Hiattville robbery was competent and admissible under proper instructions.

"It has been said these exceptions are founded on as much wisdom and justice as the rule itself, and that the rule should be strictly enforced and should not be departed from except under conditions which clearly justify such a departure."

While in the case at bar the evidence of the two other offenses of the defendant were permitted to go to the jury without objection, only to show the common scheme, or plan, or intent, as was permitted in the Daves v. State case, supra, we feel that it was admissible under the foregoing authorities, when limited by proper instructions. Also for the purpose of establishing identity and to overcome the special plea of alibi, raised from the inception of the case. It is well to note that the court gave, without objection, a proper instruction covering the special defense of alibi.

■ We are of the opinion that there is no proper showing of reversible error in this case; but the record discloses this defendant to be of apparent prior good reputation and apparently this is his first involvement with the law. We are, therefore, of the opinion that the ends of justice will be served by reducing his sentence from three years in the penitentiary, to two years.

As so modified, the judgment and sentence is affirmed.

POWELL, P. J., and NIX, J., concur.