BLANCHE WOOD v. STATE OF ARKANSAS
HERMAN WOOD AND BLANCHE WOOD v.
JAMES BARTON AND ROBERT PHILPOT

5446—5-5452                          450 S. W. 2d 537

Opinion delivered February 16, 1970

[Rehearing denied March 23, 1970.]

110

*Donald Poe,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

FRANK HOLT, Justice. The appellant, Blanche Wood,

was charged by information with the crime of cruelty to a child. Ark. Stat. Ann § 41-1105 (Repl. 1964). A jury imposed a $100 fine and three months' jail sentence with a recommendation that the jail sentence be suspended. The trial court accordingly rendered judgment on that verdict. In a separate proceeding the circuit court upheld the action of the County Juvenile Court finding that the two adopted children of appellants, Blanche and Herman Wood, were dependent and neglected children and its order removing them from their custody. The two separate cases are consolidated for appeal purposes.

We first discuss the appeal relating to child abuse. For reversal appellant, Blanche Wood, contends that the trial court erred in refusing to grant her a change of venue. In support of her motion she submitted the affidavits of five persons to the effect that appellant could not receive a fair and impartial trial in Polk County. The state presented oral evidence to the contrary from eight witnesses which was followed by rebuttal testimony of five witnesses for appellant. This procedure is provided for in Ark. Stat. Ann. § 43-1501 et seq. (Repl. 1964). A practicing attorney and a former sheriff were among appellant's witnesses who testified that a hostile public feeling existed throughout the county against appellant. The appellant also submitted evidence relating to radio broadcasts and published news articles in support of her contention that public prejudice existed. One exhibit is a newspaper column entitled "Stargazing" in which the writer in effect condemns child abuse and commends the county judge for his corrective efforts. Appellant's name is not mentioned. Another exhibit is a newspaper report factually relating to the transfer of the child abuse case from municipal to circuit court. Another exhibit is a newspaper article reciting that a petition was filed in the county court seeking to remove the children from the custody of both appellants. It quoted the strong feelings expressed by the county judge on the subject of child abuse.

In contradiction the state presented witnesses who had an extensive or countywide acquaintance. They consisted of two car dealers, the administrator of the Polk County Memorial Hospital, a farmer, the operator of a public garage, a rural resident for appoximately 22 years, the manager of the local radio station, and a photographer who was a longtime resident of the county. According to them the appellant could be accorded a fair and impartial trial by a jury selected in that county. Further, on cross-examination, one of appellant's witnesses stated: "From what I have heard others say, I believe she could obtain a fair trial, yes, sir."

It was proper procedure for the court to receive oral testimony to support the position of either the defendant or the state. *Bailey* v. *State,* 204 Ark. 376, 163 S. W. 2d 141 (1942); *Trotter and Harris* v. *State,* 237 Ark. 820, 377 S. W. 2d 14 (1964). We have often said that unless the trial court abuses its discretion when it overrules a motion for a change of venue the court's order is conclusive on appeal. *Meyer* v. *State,* 218 Ark. 440, 236 S. W. 2d 996 (1951); *Perry and Coggins* v. *State,* 232 Ark. 959, 342 S. W. 2d 95 (1961); *Lauderdale* v. *State,* 233 Ark. 96, 343 S. W. 2d 422 (1961). In *Bailey* v. *State, supra,* we stated:

"* * * the presumption of law is that a defendant can get a fair and impartial trial in the county in which the offense was committed, and that in order to overcome this presumption the defendant must show clearly that this cannot be done. Indeed, a change of venue in a criminal prosecution must be deemed a wrong to the public unless the necessities of justice to the accused require it, and before a court is justified in sustaining an application therefor on account of the prejudice of the inhabitants of the county, it must affirmatively appear that there is such a feeling of prejudice prevailing in the community as will be reasonably certain to prevent a fair and impartial trial."

In the case at bar, the trial court observed:

"Now, based upon the evidence that I have heard, I don't think anybody could conscientiously say that I have heard evidence which affirmatively shows me that there is such a feeling of prejudice prevailing in this community as would be reasonably certain to prevent a fair and impartial trial. To the contrary, the preponderance of the evidence shows me that she can receive a fair trial. Hence, the motion for change of venue is denied, and the defendants exceptions to the ruling of the court are noted of record."

When we apply our well established rules of law respecting appellant's motion for a change of venue, we cannot say that the trial court abused its discretion in refusing appellant's motion.

Appellant next contends that the trial court erred in allowing testimony of other whippings or cruel punishment which occurred prior to the alleged offense upon Mary Wood on March 14, 1969. Mary, appellant's adopted daughter, is 14 years of age and in the eighth grade. She testified that before she left for school on March 14, her mother became angry with her about the toaster, her clothing, and leaving a protractor at school and administered three separate beatings with a strap. There was evidence that the whippings consisted of 20 to 50 licks across her back, shoulders, and arms. According to the medical and photographic evidence and testimony of witnesses who observed the girl's condition, her back was bruised and swollen with bleeding underneath the skin and blood would ooze from the outer edges of the wounds when pressure was applied. She also testified that on the previous day her mother had strapped her and hit her on the head with a dull object. She exhibited scars from scalp wounds which she attributed to her mother. The court permitted Mary, her brother, Don, 12 years of age, and others to testify about these and other prior acts of appellant mistreating her over a period of time dating back several years, or to when she was in the third grade.

Appellant argues that the incident of March 14 was the "gravamen" of the offense alleged in the information, that the testimony regarding previous mistreatment had no connection with the alleged offense on that date, and that the other offenses "were so remote as to be irrelevant." We cannot agree. Appellant was charged with violating § 41-1105. It will be noted that an element of this statute requires proof of habitual cruel mistreatment. It was, therefore, proper to introduce previous acts of misconduct to meet this requirement. Furthermore, the court instructed the jury whenever such evidence was introduced, as well as in its final instruction, that the jury should consider this evidence only for the purpose of showing appellant's intent, motive, habit or practice.

Appellant cannot claim surprise or prejudice on account of this evidence. The appellant, in her motion for a bill of particulars, asked that the prosecuting attorney "[s]tate the alleged facts and incidents of habitually and cruelly mistreating and when and where." To which the state responded that it planned "to show numerous acts occurring within the previous five or six years—beatings." Nor was it error for the state to allege acts of cruelty in the disjunctive. The information merely copies the wording of the statute and does not allege more than one separate and distinct offense. In *Harris* v. *State*, 239 Ark. 771, 394 S. W. 2d 135 (1965), we said: "* * * An indictment or information, except as provided in Ark. Stat. Ann. § 43-1010 (Repl. 1964) our joinder statute, must charge only one offense, however, if it could have been committed by different modes and means the indictment or information may allege the modes and means in the alternative. Ark. Stat. Ann. § 43-1009. (Repl. 1964)." We further said: "* * * The rule of inadmissibility of other crimes has no application when other crimes are an inseparable part of the alleged crime. If crimes are mingled to such an extent that they form an indivisible transaction and the full proof of any one of them cannot be presented without showing the others, then evidence of any or all of them is admissible against a defendant on trial for any of-

fense which is itself a detail of the whole criminal scheme."

It is firmly established that evidence of other crimes similar in nature to the offense being tried and not too remote is admissible as bearing upon intent, motive, habit and practice. *Hummel* v. *State,* 210 Ark. 471, 196 S. W. 2d 594 (1946); *Roach* v. *State,* 222 Ark. 738, 262 S. W. 2d 647 (1953). In child abuse cases, such as incest and carnal abuse, we have held that the state may show other acts of misconduct perpetrated upon the child. *Adams* v. *State,* 78 Ark. 16, 92 S. W. 1123 (1906); *Williams* v. *State,* 156 Ark. 205, 246 S. W. 503 (1922). In *Adams* v. *State, supra,* we approved evidence that tended to prove incestuous conduct which commenced 6 to 7 years before the defendant was charged and that it continued up to the time of the alleged offense. See, also, *Roach* v. *State, supra; Ward* v. *State,* 236 Ark. 878, 370 S. W. 2d 425 (1963). In the case at bar we are of the view that previous acts of cruelty or mistreatment were admissible evidence as being in conformity with the terms of the statute as well as our cases on this subject.

The appellant next contends that the trial court erred in refusing to admit evidence and to give instructions on the right of the appellant, as a parent, to chastise her daughter for infractions. As to the evidence, we do not find that the trial court refused any evidence offered by the appellant on her right to correct her daughter. In fact, the appellant and her husband and other witnesses were allowed to present testimony that both the boy and the girl were "problem children" and to detail instances of their incorrigible conduct consisting of lying, stealing, disrespect, and disobedience. It is fair to say that the theme of appellant's rejected instructions is that a parent is not responsible for punishment inflicted upon a child which is merely excessive or immoderate and, further, that it was incumbent upon the state to prove that the parent acted with a wicked or malicious purpose and not in the exercise of acceptable authority. Appellant cites cases from other

jurisdictions and none from ours.

Appellee, the state, relies upon § 41-1105 and argues that this statute requires the state to prove the element of cruelty as contended by appellant. This statute obviously precludes a conviction where the parent merely used bad judgment. It appears that the appellant's theory was fully presented to the juy when the court read the statute and then, by its Instruction No. 8, restricted · consideration of the case to acts of cruelty or habitual mistreatment. The two adopted children described these acts of mistreatment by the appellant, which evidence the jury could believe as it apparently did. The appellant and her witnesses categorically denied the testimony of the children. Appellant presented evidence that she and her husband had provided love and a good Christian home, and had spent large sums of money on the children in an effort to be good parents. There is evidence that appellant is suffering from a terminal cancer as a result of a radical breast operation which would make it impossible for her to wield a rope, a .slat, a strap, or any other object to inflict corporal punishment. Both parents claim that the extent of any punishment administered by them was to require the children to take certain physical exercise to which they objected. However, the appellant herself admitted that she required the two children to administer punishment to each other because she "couldn't punish them." We are of the view that the issues were fairly presented to the jury based upon instructions given by the court.

Next appellant asserts that the court erred in giving its Instruction No. 6 which covered matters not in cluded in the evidence nor the information. It appears appellant is referring to that part of the instruction which refers to depriving a child of necessary food, clothing or shelter. This instruction follows verbatim the statute alleged to have been violated. We have often held that an instruction which, in effect, is a reading of the statute alleged to have been violated and which is applicable to the facts of the case is proper. *Graham* v.

*State,* 202 Ark. 981, 154 S. W. 2d 584 (1941); *Stard* v. *State,* 204 Ark. 247, 161 S. W. 2d 756 (1942). By Instruction No. 8 the court properly defined that part of the statute which is applicable to the facts in the case at bar. Omitted, as an element of the alleged offense, was any reference to depriving appellant's child of necessary food, clothing or shelter. Therefore, we find no merit in appellant's contention.

Appellant next contends that she should be granted a new trial on newly discovered evidence as shown by a "petition filed herein." This petition was filed in this court two months subsequent to the transcript being filed. Pursuant to our rules we denied the filing of the petition. Although we cannot consider this petition, we observe that this is without prejudice to the appellant to properly present this motion to the trial court.

We next discuss the appeal of Blanche and Herman Wood from the judgment of the circuit court affirming the order of the juvenile court in removing their two adopted children from appellants' home. On March 14, 1969, the same date that appellant, Blanche Wood, was charged with child cruelty, a petition was filed in the county juvenile court by two members of the Polk County School Board alleging that Mary and Don Wood were dependent or neglected children and asking that they be removed from the custody of their parents. The appellants assert that the proceedings in the juvenile court were void ab initio because appellants were not made and named parties defendants and were not served with summons as required by § 45-210 et seq. It appears that both appellants and their address were named in the original petition; that two subpoenas, not included in the record, were issued "to appear and testify"; that a copy of the temporary order was served upon appellant Herman Wood, the father; that on March 25, 1969 the children appeared in the juvenile court and testimony was adduced from 12 witnesses, including the children; that appellants were present and refused the offer to testify or produce evidence; that their attorney,

who accompanied them, cross-examined the witnesses produced by the petitioners; that the appellants appealed from the order of the juvenile court to the circuit court; and that on April 23, 1969 the appellants filed an intervention denying each and every material allegation contained in the original petition filed in juvenile court. On May 16, 1969, or the day following the criminal trial, the circuit court conducted a hearing on the appeal from the juvenile court order. Should we say, which we do not, that the proceedings in the juvenile court were void ab initio, the appellants are in no position to complain. They were present and represented by counsel on their intervention in the circuit court proceedings. This was a trial de novo upon the merits of the case and the appellants are in no position to invoke any jurisdictional defects, if such existed, in the juvenile court proceedings.

Nor can we agree with appellants that the evidence was insufficient to sustain the finding and order of the circuit court which affirmed the action of the juvenile court removing the children from the custody of the appellants. The court had before it, by agreement of the parties, the testimony that had been presented the previous two days in the trial of the criminal case relating to the habitual mistreatment of the children by the appellants. The children again repeated their testimony that their mother had beaten Mary with a hose, a board, a rope, and a strap and that the father had never attempted to stop this mistreatment except on one occasion when the mother was attempting to choke Mary. The children testified that they had to wear discarded or used clothes to their embarrassment; that they were required to eat at a separate table and that when they refused to eat certain food, they would get a beating; that the mother would call Mary opprobrious names and use curse words. There was other evidence detailing offensive treatment that is unnecessary to mention. According to the school officials the children had average intelligence but they were two to three years behind their achievement tests. Both were making failing grades in most of their subjects. One official testified that one of the

problems with Mary was her stealing and telling lies. He further testified that the appellant, Blanche Wood, became angry with him when he refused her request to administer corporal punishment to Mary in front of her classmates. Don testified that his mother required him to eat cigarette filters found in the dog pen when she suspected that he had been smoking. Two county school board members, who are the petitioners, testified that they had observed Mary Wood on March 14th and that she had been severely or brutally beaten with some sort of strap or other object. As in the criminal proceeding, the appellants denied any mistreatment or neglect of their children. Appellants presented evidence that they had always provided a proper home, care and affectionate parental attention· to their children. The evidence is in conflict and we cannot say that it is insufficient to sustain the action of the trial court.

We find no error in the proceedings in either case and both judgments are affirmed.