Bobby Gene TARKINGTON

*v.*

STATE OF ARKANSAS

5494                                        469 S. W. 2d 93

Opinion delivered June 21, 1971
[Rehearing denied August 9, 1971.]

974

*Guy H. Jones, Phil Stratton* and *Guy H. Jones, Jr.,* for appellant.

*Ray Thornton,* Attorney General; *Milton Lueken,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant states 15

points for reversal of his conviction of the crime of rape. He argues them in four groups and relies upon those arguments to support his first three points, which are not otherwise covered.

Appellant first asserts that his conviction was based upon prejudice, bias, speculation, conjecture, surmises and irrelevant and impeached testimony. This argument is based upon attacks on the credibility of the prosecutrix. He contends that her testimony is the only incriminating evidence against him. He points out that his accuser made no outcry, gave no notice to her neighbors in a thickly populated district in the city of North Little Rock, made a positive identification of a ring and a knife which she said appellant had in his possession at the time of the alleged attack without any reason for her certainty, or means of distinguishing them from thousands of other such objects similar in appearance, and varied her testimony at different times as to the hour and minute of the alleged crime and her state of dress when it occurred. This witness was positive in her identification of appellant, but he says that the jury could not have properly based its verdict upon her testimony, because it should be considered as incredible.

Appellant concedes that corroboration of prosecuting witness is not essential to a conviction of the crime of rape. *Lacy* v. *State,* 240 Ark. 84, 398 S. W. 2d 508. Where the prosecuting witness is positive in her identification, the question of her credibility is for the jury. *Hamm* v. *State,* 214 Ark. 171, 214 S. W. 2d 917. Prosecutrix, who said that she was then 15 years old, testified that she attempted to scream, but "nothing would come out." She also said that appellant, who had pulled a knife on her, told her that he would not kill her if she cooperated, but if she said anything he would kill her. Failure of the prosecutrix to make an outcry or to make prompt complaint is properly considered when the defense is based upon her consent or want of resistance or upon the contention that a rape was not committed by someone. *Kurch* v. *State,* 235 Ark. 688, 362 S. W. 2d 713, cert. denied, 373 U. S. 910, 83 S. Ct. 1299, 10 L. Ed.

2d 412; *Daniels* v. *State,* 186 Ark. 255, 53 S. W. 2d 231; *Jackson* v. *State,* 92 Ark. 71, 122 S. W. 101. Even then the failure to make an outcry is excused if prevented by fear of the prosecutrix for her life or bodily safety. *Pemberton* v. *State,* 221 Ark. 19, 251 S. W. 2d 825; *Zinn and Cheney* v. *State,* 135 Ark. 342, 205 S. W. 704. But no such defense was made, and the prosecutrix testified that she did not make an outcry because of her assailant's threats. The prosecutrix and her husband had only lived at the apartment where the offense took place for three weeks. She testified that she told an elderly lady across the street what had happened when she found that she was unable to reach her husband by telephone because it was out of order. She then went by cab to the place her husband was in school and reported the incident to him. Questions of identification and alibi (the defense made by appellant) were jury questions. *Hamm* v. *State, supra; Lacy* v. *State, supra.* Resolution of conflicts in the testimony of the prosecutrix was also a jury function. *Marshall* v. *State,* 250 Ark. 585, 466 S. W. 2d 920.

The next group of points argued by appellant turns upon his argument that a lineup identification, when he was without the assistance of counsel, violated his constitutional rights. Appellant was charged with having committed the crime on January 17, 1967, and the lineup in question was held on January 24, 1967, so the decisions in *United States* v. *Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, and *Gilbert* v. *California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, both decided June 12, 1967, do not apply. *Stovall* v. *Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *Foster* v. *California,* 394 U. S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (1969). Appellant contends, however, that the identification procedures at the lineup, when judged by the totality of the circumstances, were so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law, relying upon *Foster.* Appellant also contends that his testimony about the lineup identification was more persuasive than that of the arresting officer. The determina-

tion of persuasiveness of the testimony on this point is a matter in which we must give substantial weight to the circuit judge's superior opportunity to evaluate credibility. See *Jackson* v. *State,* 249 Ark. 653, 460 S. W. 2d 319.

The circumstances here are entirely different from those in *Foster,* however. Sergeant Bruce of the North Little Rock Police Department picked Tarkington up off the streets, from a description given by the prosecutrix, and a radio report that a man fitting that description was in the area. Another suspect had been previously picked up from this description, but the prosecuting witness failed to make an identification in a lineup in which he was placed, so he was released. According to Bruce, he placed Tarkington and three other persons in a lineup to be viewed by the prosecutrix at police headquarters. None of the others resembled Tarkington except that one of them was near Tarkington's weight and size. Tarkington said he was in the lineup about 10 minutes. Mrs. Jones testified that as soon as she looked at Tarkington, she said, "That's the man." Her immediate identification of Tarkington was corroborated by Bruce.

The essential elements making the lineup identification a denial of due process in *Foster* are lacking here. Foster was at least six inches taller than both of the other persons in that lineup. He wore a jacket similar to one which the victim of the crime described as worn by the person who robbed him. The victim there could not positively identify Foster. Even after a face-to-face confrontation across a table in the absence of anyone else except prosecuting officials, the witness was unsure whether Foster was one of the robbers. At a second lineup in which there were five persons, of which Foster was the only one who had been in the first, the victim was convinced of Foster's identity. It was held that the procedures followed had the police, in effect, saying to the witness, "This is the man," made eventual identification of the accused by the victim inevitable and so undermined the reliability of the identification as to violate

due process. Since one man in the lineup with Tarkington was of his weight and size, and the prosecutrix was prompt and positive in her identification after having failed to identify her assailant in a previous lineup, we find no violation of due process here. It also seems significant to us that a "class" ring fitting the description of one worn by the assailant, as related by the prosecutrix, had been removed from Tarkington's hand before the lineup was viewed by the prosecutrix.

The next group of points argued by appellant has to do with an allegedly prejudicial course of conduct of the prosecuting attorney. In appellant's original motion for new trial, he only asserted that the prosecuting attorney violated the orders of the court by asking him if he were not charged with assault with intent to rape on January 23, 1967, and improperly argued that appellant's whole defense was framed by Robert Tarkington, his father. An amended motion filed later asserted the single ground that the prosecuting attorney conducted a star chamber proceeding at which certain witnesses were intimidated and harassed.

We are not aware of any question propounded to appellant about his being *charged* with assault with intent to rape. The only question of that nature called to our attention is one commenced by the deputy prosecuting attorney conducting the trial for the state. He asked appellant, "On the twenty-third day of January, 1967, did you assault Lois _ _ _ _?" He never completed the question because the prompt objection by appellant was sustained by the circuit judge, who also admonished the jury to disregard the question.

There are several reasons, in addition to appellant's failure to make this question a part of his motion for new trial, why there was no prejudicial error. The court's admonition was certainly calculated to remove any prejudice. If appellant had felt that it failed to do so, he should have moved for a mistrial. Not having done so, he is in no position to complain. *Freyaldenhoven* v. *State,* 217 Ark. 484, 231 S. W. 2d 121; *Fair* v.

*State,* 241 Ark. 819, 410 S. W. 2d 604. When a defendant takes the stand, he may be asked, in good faith, about other crimes he may have committed, for the purpose of throwing light upon his credibility, but he cannot be asked if he has been charged, indicted or accused of other crimes. *Johnson* v. *State,* 236 Ark. 917, 370 S. W. 2d 610. Appellant's argument apparently goes, however, to the deputy prosecuting attorney's good faith in asking the question because appellant relates the question to earlier incidents in the trial. It is admitted that, at the beginning of the trial, the court had directed the deputy prosecuting attorney not to call Lois Sikes as a witness. The court had heard a statement by the deputy prosecuting attorney that he expected to prove a similar incident within a week after the rape of the prosecutrix. During the course of the trial the deputy prosecuting attorney called Lois Sikes as a witness. She came from the witness room and walked past the jury box, but never took the stand, because of an objection by appellant's counsel and his request for a hearing in chambers.

At the hearing in chambers the deputy prosecuting attorney made the following proffer:

I have called as my next witness Mrs. Lois Sikes, and I would propose to prove by her that on the 23rd of January, 1967, this defendant came to her house asking about vacant apartments; that he asked her for a drink of water in order to gain entrance; that, upon gaining entrance, he pulled a knife on her and stated to her that he was going to have sexual relations with her; that, at that time, she lived at 505 Olive Street in North Little Rock, in close proximity to the residence of the complaining witness in this case; and I propose to introduce this testimony for the purpose of showing a course of conduct, not for the purpose of proving guilt or innocence in the case which we are trying today.

Although the circuit judge expressed some uncertainty about the matter, he sustained appellant's objection, and the state rested its case. After a motion for a directed

verdict by appellant was denied, the court instructed the deputy prosecuting attorney to call his next witness. The deputy prosecuting attorney responded that he understood the court to have ruled that Mrs. Sikes (the state's last witness) would not be permitted to testify, and that the state rested.

It was appropriate for the circuit judge to be extremely cautious about the admission of such testimony, as any real doubt about the question should be resolved in favor of the accused. We have zealously guarded the rights of accused persons to have the state's evidence strictly confined to the issues to insure that no one is convicted because he has committed offenses other than that for which he is on trial or because he is of bad character and addicted to crime. See *Alford* v. *State*, 223 Ark. 330, 266 S. W. 2d 804; *Moore* v. *State*, 227 Ark. 544, 299 S. W. 2d 838, cert. denied, 358 U. S. 946, 79 S. Ct. 356, 3 L. Ed. 2d 353. Yet the mere fact that evidence shows the defendant was guilty of another crime does not prevent its being admissible when otherwise competent on the issue on trial. *State* v. *Dulaney*, 87 Ark. 17, 112 S. W. 158, 160.

In *Alford*, we held that evidence of a prior assault with intent to rape by a defendant on trial for rape was inadmissible. Intent was not an issue either there or here. We recognized, however, that if conduct other than that with which an accused is charged is relevant as tending to prove some material point in issue, and not that the defendant is a criminal, evidence of that conduct may be admissible, but that a proper cautionary and limiting instruction should be given. Among those instances we gave was that arising where alibi is an issue.

In *Moore*, the state had been permitted to prove that two of four defendants on trial for murder committed in the perpetration of robbery assaulted and robbed another victim five days after the crime for which they were on trial. We held that error was committed in admitting this evidence because no connection between the two crimes was even alleged. The only similarity between the two was that the victims in both were picked

up while hitchhiking. We again pointed out that there are innumerable situations in which proof of other conduct on the part of an accused is relevant and competent, even though it also shows the commission of another crime.

We have long recognized that evidence of other conduct by a defendant which shows other crimes by him is admissible when relevant to show mode or methods of operation, habits and practices of the defendant and to identify him as the person who committed the crime for which he is on trial. *Tolbert* v. *State,* 244 Ark. 1067, 428 S. W. 2d 264; *Wood* v. *State,* 248 Ark. 109, 450 S. W. 2d 537; *Roach* v. *State,* 222 Ark. 738, 262 S. W. 2d 647; *Parks* v. *State,* 136 Ark. 562, 208 S. W. 435; *Puckett* v. *State,* 194 Ark. 449, 108 S. W. 2d 468; *Larmon* v. *State,* 171 Ark. 1188, 286 S. W. 933. We have repeatedly held that evidence of the commission of other similar crimes or acts by a defendant at about the same time, tends to show the guilt of the defendant when it tends to establish his identity as the person who committed the crime charged. *Kurch* v. *State,* 242 Ark. 742, 415 S. W. 2d 61; *Miller* v. *State,* 160 Ark. 469, 254 S. W. 1069; *Keese and Pilgreen* v. *State,* 223 Ark. 261, 265 S. W. 2d 542; *Reed* v. *State,* 54 Ark. 621, 16 S. W. 819; *Nash* v. *State,* 120 Ark. 157, 179 S. W. 159; *Cain* v. *State,* 149 Ark. 616, 233 S. W. 779.

One of the most widely recognized applications of the rule is in cases where the modus operandi tends to establish identity. If the crime charged has been committed by a novel means or in a particular manner, and the identity of its perpetrator is in issue and not otherwise conclusively established, evidence of a defendant's commission of a similar offense by that means or in such manner is admissible as tending to show identity of the perpetrator when the similarity of the means or manner employed logically operates to set the offenses apart from other crimes of the same general variety and tends to suggest that the perpetrator of one was the perpetrator of the other. *Jones* v. *Commonwealth,* 303 Ky. 666, 198 S. W. 2d 969 (Ct. App. 1947); *People* v. *Haston,* 69 Cal. 2d 233, 70 Cal. Rptr. 419, 444 P. 2d 91

(1968); *State* v. *Moore,* 460 P. 2d 866 (Ore. 1969); *Harris* v. *State,* 189 Tenn. 635, 227 S. W. 2d 8 (1950); *Wollaston* v. *State,* 358 P. 2d 1111 (Okla. Crim. 1961); *Nester* v. *State,* 75 Nev. 41, 334 P. 2d 524 (1959); *State* v. *Francis,* 91 Ariz. 219, 371 P. 2d 97 (1962); *State* v. *Redmond,* 19 Utah 2d 272, 430 P. 2d 901 (1967); *Thessen* v. *State,* 454 P. 2d 341 (Alaska 1969), cert. denied, 396 U. S. 1029, 90 S. Ct. 588, 24 L. Ed. 2d 525; *Ferrell* v. *State,* 429 S. W. 2d 901 (Tex. Crim. App. 1968); *Anderson* v. *State,* 222 Ga. 561, 150 S. E. 2d 638 (1966); *Brasher* v. *State,* 33 Ala. app. 13, 30 So. 2d 26 (1946); Affirmed & modified, 249 Ala. 96, 30 So. 2d 31 (1947); *Williams* v. *State,* 80 S. Ct. 102, 4 L. Ed. 2d 86; *United States* v. *Johnson,* 382 F. 2d 280 (2nd Cir. 1967); *Fernandez* v. *United States,* 329 F. 2d 899 (9th Cir. 1964), cert. denied, 379 U. S. 832, 85 S. Ct. 621, 13 L. Ed. 2d 40; *State* v. *Sorenson,* 270 Minn. 186, 134 N. W. 2d 115 (1965); *State* v. *Stevens,* 26 Wis. 2d 451, 132 N. W. 2d 502 (1965); *Layton* v. *State,* 248 Ind. 52, 221 N. E. 2d 881 (1966); *State* v. *McClain,* 240 N. C. 171, 81 S. E. 2d 364 (1954). See also, *State* v. *Stephenson,* 191 Kan. 424, 381 P. 2d 335 (1963); *State* v. *Turner,* 81 N. M. 571, 469 P. 2d 720 (1970).

Examples of application of the identity exception to the general rule of exclusion to the method or means of approach taken by an assailant are numerous. See *e. g., Allen* v. *State,* 201 Ga. 391, 40 S. E. 2d 144 (1946), where the common elements were that all the rapes and attempts to rape were committed by a negro upon white women in the same general section of a city, and a knife was the means of intimidation and coercion; *Hart* v. *State,* 447 S. W. 2d 944 (Tex. Crim. App. 1970), where the subsequent event about which evidence was admitted occurred eight days after the rape charged and was similar in that the person involved made his approach after watching the women in a washateria; *Nester* v. *State,* 75 Nev. 41, 334 P. 2d 524 (1959), where the rape charged occurred about six months prior to the other rape and was similar in that the fuses or lights were unscrewed to keep the area where contact was made in darkness, the assailant concealed his face, the threatening language was virtually identical, the method of forcible entry was similar and accomplished without removal of the

victim's garments; *State* v. *Francis,* 91 Ariz. 219, 371 P. 2d 97 (1962), where the victim and another young female were each stopped on different occasions by a man who showed a badge, identified himself as a juvenile officer and each was asked to get into his automobile; *Williams* v. *State,* 110 So. 2d 654 (Fla. 1959), in a prosecution for rape, where the assailant, who concealed himself in the back seat of the victim's automobile in a parking lot at night, explained that he had crawled into the automobile to take a nap, thinking it was his brother's, evidence was permitted to show that six weeks earlier the accused gave the same explanation when frightened away from another lady's automobile in which he had concealed himself at night; *People* v. *Lindsay,* 227 Cal. App. 482, 38 Cal. Rptr. 755 (1964), wherein the charged rapes and uncharged ones were similar in that the perpetrator covered the faces or eyes of his victim, and bound her before committing the rape; *State* v. *Stevens,* 26 Wis. 2d 451, 132 N. W. 2d 502 (1965), where all thefts by fraud and attempts followed a procedure by which the thief would come to the home of a stranger, ask for an unknown person, claim ability to cure an ill person in the home, ask for a glass of water in which she put certain material, ask for money to bless and wrap in a cloth, use ruses to get both husband and wife out of their house and then disappear with the money; *State* v. *Moore,* 460 P. 2d 866 (Ore. App. 1969), where the robber in both cases initiated the robbery with the question, "Would you believe this is a holdup?" and then pulled a gun; *People* v. *Adamson,* 225 Cal. App. 74, 36 Cal. Rptr. 894 (1964), where the robbery charged occurred in Sacramento, California, two weeks prior to another in Reno, and in both cases, two men entered, one produced a hand weapon, pointed it toward a clerk and caused the clerk to turn his back while the other went behind a counter and removed only currency from a cash register; *State* v. *Woolard,* 467 P. 2d 652 (Ore. App. 1970), where a ring was discovered missing in a jewelry store on two occasions shortly after the accused and a female companion had left after trying on rings; *People* v. *Perez,* 65 Cal. 2d 615, 55 Cal. Rptr. 909, 422 P. 2d 597 (1967), where all the robberies were committed during the evening or early morning, two or three men participated,

one or more of whom wore a mask, a gun was used, and no victim was physically injured: *Thessen* v. *State,* 454 P. 2d 341 (Alaska 1969), where 10 fires were started in trash piles with paper towels or tissue and the fire charged was started with paper towels taken from a trash bucket; *Ferrell* v. *State,* 429 S. W. 2d 901 (Tex. Crim. App. 1968), where the robber of two different motels on occasions eight days apart was wearing a hat, drawstring gloves, a woman's hose over his face and exhibited an automatic pistol; *Webster* v. *State,* 425 S. W. 2d 799 (Tenn. Crim. App. 1967), cert. denied, 1968, where the instructions given and procedures followed by the abortionist in all instances were the same. Other cases where evidence of rapes or attempts to rape other persons was held admissible to establish identity in trials for rape or carnal abuse include: *Mitchell* v. *State,* 45 Ala. App. 668, 235 So. 2d 917 (1970); *Mosley* v. *State,* 211 Ga. 611, 87 S. E. 2d 314 (1955); *Anderson* v. *State,* 222 Ga. 561, 150 S. E. 2d 638 (1966); *People* v. *Clark,* 6 Cal. App. 3d 658, 86 Cal. Rptr. 106 (1970).

We have made this application of the rule in some cases without actually stating it, apparently accepting it as well established. For instance in *Puckett* v. *State,* 194 Ark. 449, 108 S. W. 2d 468, we held testimony about an attempted burglary by the appellee about 15 minutes prior to the burglary with which he was charged to be admissible. The house burglarized was entered by cutting a screen and breaking a window in about the same manner as the accused was earlier seen attempting entry into another house. In *Kurck* v. *State,* 242 Ark. 742, 415 S. W. 2d 61, testimony of witnesses about previous similar attempts to defraud by a "green money racket money press" was held properly admitted to show the accused's identity, scheme, purpose, intent, design and motives.

In this case, the prosecutrix testified substantially as follows:

Appellant knocked at her door and inquired about the apartment next door. When she brought a rent

receipt to the door to show appellant the name of the apartment building operator, Tarkington asked her for a drink of water. She told him to wait at the latched screen door, but when she returned with the water, he had entered the living room. She persuaded him to come outside by showing him the apartment office, but he asked for another drink of water. She became frightened and tried to get inside her apartment and close the door, but appellant followed her, prevented her from closing the door and followed her into the bedroom. When she turned he had a knife in his hand and was saying, "Don't be scared. I won't hurt you if you will just cooperate." He told her to pull off her housecoat, then pushed her down on the bed and raped her.

While the trial judge must exercise a sound judicial discretion in admitting such evidence, the similarity in the approach was such that the admission of Lois Sikes' testimony consistent with the proffer would not have been error especially if accompanied by an instruction limiting the purpose for which the jury might consider this evidence.

Appellant seeks to connect the calling of Mrs. Sikes to the stand, the later question partially propounded to her and testimony on hearing of his motion for new trial that this proposed witness had been seen talking to some of the jurors. The subject of the conversation was not shown. Mrs. Sikes denied that any such thing took place. If the testimony of his witnesses, both of whom were relatives of appellant, was given full credit, perhaps the trial court would have been justified in finding prejudice or conducting further investigation. No juror was ever identified. The only one called as a witness could not remember Mrs. Sikes' having been called to the witness stand or anyone's having spoken to him at all. We are unable to predicate reversal upon the record in this regard, as the question was one of credibility.

Appellant's argument about the "star chamber" proceeding is based upon the following sequence of events. His first witness was his father, Robert Tarkington. This

witness laid the foundation for appellant's defense of alibi. The father identified one Gerald Cox as a person who was working with him on the date of the offense charged and as one who would know the date and time of a telephone call the father received from his son on that date. After two other alibi witnesses had testified, appellant called Gerald Cox as his next witness. The state's attorney then inquired whether the witnesses who had testified and those who had not were being segregated. When informed that they were not, he requested that this be done, and the court granted the request. Appellant's motion for mistrial was denied. The deputy prosecuting attorney requested a hearing in chambers, which was granted. At that hearing conducted while the jury was excused for the noon recess, the deputy prosecuting attorney examined Robert Tarkington and Gerald Cox, the uncle of appellant's wife, as to whether the witnesses who had testified and returned to the witness room had discussed the proceedings during their testimony with the witnesses who had not been called, and he specifically asked Tarkington if he had "coached" the other witnesses. When no significant disclosure was made, the deputy prosecuting attorney made no motion. Appellant's counsel again moved for a mistrial on the ground of intimidation of witnesses.

Appellant argues that this proceeding placed the witnesses under such a strain that their demeanor was affected and their credibility damaged. At the hearing on the motion for new trial, three of appellant's witnesses who had not been on the witness stand prior to this proceeding testified that the elder Tarkington and Cox returned to the witness room all "shook up" and even though they would not say anything, this frightened or made them nervous. One of these three said that he could not look at or talk straight to the jury. Another, appellant's father-in-law, said he was sick. Cox said that he was nervous. One of these witnesses stated that a rumor "got out" that anybody from Faulkner County would be prosecuted for perjury. The circuit judge heard all the testimony on the motion for new trial and observed these witnesses when they did testify. We cannot

say that there was any intimidation of witnesses through this proceeding or that the discretion of the trial judge was abused in denying a new trial on any alleged misconduct on the part of the attorney prosecuting.

It is not at all clear to us how conduct of the prosecutrix during the trial is misconduct of the prosecuting attorney. Nevertheless, appellant showed by the testimony of the deputy prosecuting attorney that the prosecutrix was present on the second day of the trial and that she and her husband were in an anteroom of the judge's chambers. He denied any recollection of this witness having cried in the presence of jurors outside the courtroom or at any time except while she was testifying, although appellant's attorney stated that he had witnessed the prosecutrix crying hysterically and waving her arms in the presence of eight or nine jurors. Appellant's first cousin, his uncle and one Junior Lee Smart, identified as appellant's father's brother-in-law, all testified that such an incident occurred during a recess, and the two relatives said that the prosecutor was with her. One of them testified that appellant's attorney saw what took place. The uncle said that someone got her out quickly. Appellant's father said that appellant's attorney had discussed the matter with him at the time it occurred. Yet, this matter was never called to the circuit judge's attention in any way prior to the motion for new trial. Even though appellant now argues that the witness was under the control of the deputy prosecuting attorney, and that he should have prevented such an occurrence, no excuse is offered for failure on the part of appellant to ask any action by the trial court at the time, or even to make the circuit judge aware of the incident, even though, according to appellant, both he and his attorney were aware of it. The circuit judge did not abuse his discretion in denying a new trial on this ground.

Appellant concedes that there is no record of the deputy prosecuting attorney's closing argument. Neither is there any record of any objection to it. Of course, we cannot consider any point based on statements in the

course of this argument. We find no reversible error for the misconduct of the state's attorney.

The next group of points relates to action of the trial court. Two points argued by appellant have to do with statements made by the trial judge. One of these was the court's admonition to the jury at the end of the first day of the trial. He admonished the jurors not to read newspapers, stating that if they did; he would have to declare a mistrial, and it had cost the state a couple of thousand dollars up to that time. Later during the presentation of appellant's evidence, he offered exhibits in the form of weather bureau reports purporting to show amount of snowfall in the Little Rock area during the months of January, February and March, The trial judge remarked that lots of times it is raining at Adams Field and not at his house. When the deputy prosecuting attorney stated that he was at a loss to determine what the offered exhibits showed, the judge asked: "Do you want to let the jury guess on it?" While the judge's statement as to the cost of the trial and his comments in regard to the weather bureau reports in the presence of the jury were perhaps inadvisable, we find no basis for reversal. Appellant did not object on either occasion, did not ask any corrective action and did not ask for a mistrial. *Kimble* v. *State,* 246 Ark. 407, 438 S. W. 2d 705.

Another argument advanced by appellant in this category is that the circuit judge erroneously refused to permit him to read the transcribed testimony of Lawrence Keathley at an earlier hearing pertaining to the case, because the witness was outside the jurisdiction of the court. He admits that the record does not disclose this action in any way.

Appellant moved for diminution of the record in this respect on April 20, 1970. We granted certiorari. The writ was returned indicating that there was no such record. The court reporter filed her affidavit that no written or oral motion to make this testimony a part of the record was ever presented to the court, and that no subpoena was issued for Lawrence Keathley.

Appellant then renewed his motion and asked permission to file a bystander's bill of exceptions. We then remanded the case to the trial court for the purpose of settling the record on June 22, 1970. When the record had not been returned, we again issued a writ of certiorari on October 9, 1970. Return of this writ on November 6, 1970, indicated that the record was complete. Appellant's motion on November 25, 1970, for certiorari or diminution of the record and for additional time to prepare a bystander's bill of exceptions was denied by this court.

Appellant now argues that we must consider a bystander's bill on this point, in spite of these proceedings. We do not agree. While appellant relies on Ark. Stat. Ann. §§ 27-1750 and 27-1751 (Repl. 1962), we have no record of the proceedings in the trial court before us and no bystander's affidavit, even though the record was on remand to the trial court for the purpose of settling the record for more than four months. Neither do we know that the testimony of the witness was relevant, material or competent.

The judgment is affirmed.